---

[No. 2226, April 4, 1918.]

EX PARTE HAMM.

SYLLABUS BY THE COURT.

1. Chapter 110, Laws 1917, held to prohibit the conducting or operating of a game of chance for money or anything of value, but not to prohibit the playing of a game of chance.

P. 34

2. The words "good behavior," as used in an order suspending sentence upon a defendant during good behavior, are defined as conduct conformable to law, and to require no higher standard of conduct than the law demands.

P. 35

3. If restrictions are to be imposed upon, the conduct of a person under sentence suspended by virtue of Code 1915, § 5075, they must be specified in the order of suspension.

P. 39

Original application for writ of habeas corpus by Elmer E. Hamm. Petitioner discharged.

FRANK J. LAVAN, of Santa Fe, and O. P. EASTERWOOD, of Clayton, for petitioner.

H. F. PATTON, Attorney General, for respondent.

OPINION OF THE COURT.

PARKER, J. At the September, 1917, term of the district court of Union county, the petitioner pleaded

guilty to a charge of conducting and operating a game of chance, to-wit, stud poker, which game was then and there played for money. The court sentenced the petitioner to imprisonment in the county jail for three months, and thereupon suspended sentence during the good behavior of the petitioner. On March 23, 1918, an order to show cause why said sentence should not be put into operation and effect was issued against the petitioner, which order to show cause alleged that it had come to the attention of the court through the district attorney's office, and by an indictment returned by the grand jury at the March, 1918, term, that the petitioner had violated the terms and conditions upon which the said sentence had been suspended. A hearing was had upon the order to show cause, and thereupon the court revoked the suspension of the former sentence, and ordered the sentence to be put into operation and effect. Petitioner has thereupon filed a petition for a writ of habeas corpus, alleging that he has not violated any of the terms upon which the said sentence was suspended. Upon the hearing on the order to show cause it appeared that the petitioner engaged with four other persons in a game of poker in the Clayton Hotel, in Clayton, N. M. The game was not run as a banking game, but there was what the gamblers call a "take-off," which in this case was used for the purpose of paying for the cards and to buy the drinks for the players. So far as appears, there was no profit to any one from the "take-off," the same being used for the cards and the refreshment of the players.

[1] The first question presented is as to whether the action of the petitioner was a violation of any law of the state. It will be unnecessary to trace the history of the anti-gambling legislation of the state with any degree of detail. It will be sufficient to say that from time to time such legislation has varied and at times the offense has consisted in the running of games and at other times it has consisted in the playing of games. Immediately prior to the act of 1917 (chapter 24 Laws 1913),

Ex parte Hamm, 24 N. M. 33.

compiled as sections 1757-1759, Code 1915, was in effect. That act made it an offense to play any game of chance for money or other thing of value, and also an offense to conduct or operate any such game, or to knowingly permit any such game to be played upon the premises owned, leased, or occupied by any person. The Legislature of 1917 departed radically from these provisions. By chapter 110, Laws 1917, it is provided:

"That any person who for money or anything of value, conducts or operates any game of chance, by whatsoever name known or howsoever played, or who knowingly permits any such game to be so conducted or operated upon premises of which he is the owner, lessee or occupant, upon conviction thereof shall be punished by a fine of not more than five hundred dollars, or by imprisonment for not more than six months, or both such fine and imprisonment."

Section 2 of the act expressly repeals sections 1757 and 1758, Code 1915. It will be seen from an examination of this section that the offense now consists in conducting a game of chance for money or anything of value. The playing of a game of chance is no longer an offense under the laws of this state. The playing of bridge whist for prizes is no longer prohibited by law, as, possibly it was under the former statute. The playing of poker is no longer an offense, as it undoubtedly was under the former statute. Under these provisions the acts of the petitioner, as shown by the testimony on the order to show cause, were not a violation of this statute. The petitioner made no money or anything of value out of the "take-off" of the game, so far as appears from the evidence, and he violated no law when he played poker for money.

[2] The suspension of the sentence pronounced upon petitioner was ordered under the provisions of section 5075, Code 1915, which provides:

"That the court may, in its discretion, suspend any sentence imposed upon such terms and conditions as it shall deem proper, and such sentence shall go into effect upon order of the court upon a breach of any of such terms or conditions by the person convicted."

Ex parte Hamm, 24 N. M. 33.

This section gives the district courts very broad power to determine for themselves in each particular case the terms upon which sentence shall be suspended. The provision was designed as a reformatory measure and the discretion of the court is without limitation as to the terms upon which the sentence will be suspended.

In this case the court suspended the sentence ''during good behavior.'' The determination of this case turns upon the proper definition of these words as used in the connection and the circumstances under which they were used. It was suggested by the Attorney General upon argument that, as the court might suspend the sentence upon any terms which he deemed advisable, he might determine for himself at any time what he considered good behavior within the meaning of the terms used. The effect of such a proposition would be to leave resting within the breast of the court an arbitrary power to determine for himself what he considered good behavior or misbehavior as applied to each individual defendant. The judge might require more in one case and less in another. Good behavior in one district court might mean a very high standard of conduct, while in another a much lower standard would be a measure to be applied. Such arbitrary power does not inhere in any judicial or other officer. Good behavior must be a legal good behavior, applicable. alike in all instances, as otherwise people dealing with courts will ever be at the mercy of the whim, the caprice, or the peculiar views of the particular judge presiding over the court. The court, under our statute, has power to make any terms and conditions upon the suspension of a sentence, and, if it is desired to retain in the breast of the court the power to determine at any time whether the sentence shall be enforced, the order of suspension shall so specify.

In United States v. Hrasky, 240 Ill. 560, 88 N. E. 1031, 130 Am. St. Rep. 288, 16 Ann. Cas. 279, the question was whether. an alien was entitled to naturalization, under the provisions of the naturalization act of June

29, 1906, c. 3592, 34 Stat. 596. That act provided, among other things, that the applicant should during his five years' previous residence have behaved himself as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same. It appeared that the applicant had been in the saloon business, and that he was familiar with the state law requiring the closing of saloons on Sunday and had known of its requirements for over two years; that in spite of that fact he had kept the back door of his saloon open on Sunday regularly; that he manifested a disposition to continue to violate the laws of the state. The applicant was refused citizenship upon the ground that he was not "well disposed to the good order" of this country, when he knowingly and habitually violated the laws of the state in which he resided. The holding, in effect, is that good behavior means conducting oneself conformably to law, and various definitions from law dictionaries are quoted to that effect.

The Attorney General, on argument, cited State · v. Everitt, 164 N. C. 399, 79 S. E. 274, 47 L. R. A. (N. S.) 848. In that case the defendant had pleaded guilty to unlawfully selling liquor. He was not sentenced, but an order was made that the judgment be suspended on the payment of costs, and, further, that the defendant should enter into a bond for his appearance at such criminal term for two years to show that he had demeaned himself as a good and law-abiding citizen. The defendant during the two years · again violated the law by selling liquor unlawfully, and the court heard testimony and found as a fact that the defendant had committed the offense, and thereupon sentenced the defendant to nine months in the county jail upon his former plea of guilty. In this case the court suspended judgment instead of suspending sentence under the judgment. The court quotes from State v. Crook, 115 N. C. 760, 20 S. E. 513, 29 L. R. A. 260, to the effect that it is within the power of the court to suspend judgment,

and to require the defendant to appear from term to term for a reasonable time and offer testimony to show good faith in some promise of reformation or continued obedience to the law. We do not understand this case to be authority for the argument suggested by the Attorney General that the court may retain in his breast, without expressing it in the judgment of suspension, a measure which he will arbitrarily apply to a defendant as he may elect. In this case the defendant was guilty of a violation of the law, and the court was authorized, under the circumstances, to pass sentence upon him. See, also, Hyser v. Comm., 116 Ky. 410, 76 S. W. 174.

We deem the only safe definition of good behavior, when the same is not restricted or modified by accompanying language, to be conducted in conformity to law. This is a "government of laws and not of man." If a man keeps within the law, he is without the control of courts, unless, in a case of this kind, some reformatory measure is applied by the court, and a restriction is put upon the conduct of a defendant not demanded by the law. In such a case such restriction must be expressed by the court when sentence is suspended. The district court evidently had something of this kind in mind when he made the order enforcing this sentence. There appears in the examination of the petitioner the following colloquy between him and the court:

"By the Court: Q. Do you remember, Mr. Hamm, when you were before me once before on a similar charge, at that time you told me you would get out of town and stay on your ranch and quit playing poker? A. No, sir; I don't remember anything like that. Q. But you had your daughter come to me and she made similar representations? A. I did not have her come to you. Q. She came. You knew she came to me? A. I knew it after she came; yes, sir. Q. And you never made any such representations as that? A. No, sir; I don't think, like that."

The district court evidently believed that the petitioner when the sentence was suspended promised him that he would quit gambling, but the order of suspension contains no such restriction upon the petitioner's

conduct. The court speaks only through its record, and this record is what this court must act upon. If the district court desired to enforce this restriction as one of the conditions of the suspension of the sentence, the order should have so specified.

[3] It should be observed in this connection that no fine distinctions are to be drawn for the purpose of curtailing the discretion and powers of the district courts in these matters. All that we hold is that, if restrictions upon the conduct of a defendant are to be imposed, they must be specified in the order of suspension.

We have, then, a case of a man sentenced to imprisonment for a violation of the gambling law, and the sentence suspended by the court during good behavior. "Good behavior" is to be defined in this connection as conduct conforming to the law. The petitioner is not shown in this case to have violated any law of the state, and has therefore not violated the conditions upon which his sentence was suspended. It follows, therefore, that the judgment of the district court was beyond its powers, and that the prisoner should be discharged from custody, and it is so ordered.

ROBERTS, J., concurs.

HANNA, C. J. (dissenting). The statute (section 5075, Code 1915) authorizing the court in its discretion to suspend any sentence, upon such conditions as it may impose, is a salutary one, evidently designed to enable trial courts to use this coercive measure to effect reformation, and I consider the rule announced in the majority opinion one which will go far to destroy the purpose or object sought to be accomplished by this law. As I construe the majority opinion, it will be necessary in all cases of suspended sentence, at least where the sentence is suspended during good behavior, for the court to undertake to establish that the defendant has committed a violation of some law, and, in my judgment, this construction is contrary to the general principle which has been held to apply in cases of suspended sen-

tences, where, as a rule, the defendant is called upon
to show cause why the sentence should not be invoked
against him by reason of his breach of the condition im-
posed upon him at the time the sentence was suspended.
In this particular case the defendant pleaded guilty,
and was sentenced for violation of the gambling stat-
ute. He was subsequently indicted for violation of the
same statute, and is cited to show cause why the former
.sentence should not be imposed upon him.

It is my opinion that the record is clear that he was
not only engaged in the gambling game which was be-
ing conducted for money, but he was, at least for a por-
tion of the time, occupying the position of dealer and
having charge of the take-off. It may be that because
it does not clearly appear that he was making a profit
by reason of his position in this respect, that a violation
of the gambling law was not shown. This construction,
however, gives to him the benefit of presumptions which
I do not consider he is entitled to under the circum-
stances. Such contention, moreover, would seem to
call for a trial and conviction, of more or less former
character, upon the second charge.

We said in the case of Ex parte Bates, 20 N. M. 542,
151 Pac. 698, L. R. A. 1916A, 1285:

"It is our conclusion, however, that the district court was
not determining, by its inquiry. whether or not the second
offense had been committed, for the purpose of a trial as
to that offense within the purview of legal procedure; but
the inquiry was solely for the purpose of determining
whether or not the condition imposed as a part of the first
judgment had, as a matter of fact, been breached, and the
commitment clearly indicates that its issuance was directed
as a result of the breach of the condition of the judgment
formerly entered. We do not consider that any new power
was vested in the courts of this state by the statute in
question, or that any of the established rules of criminal
procedure have been abolished, and, having held that it was
within the power of the district court to make the order
of suspension under the conditions and circumstances point-
ed out, it must necessarily follow that the court, having the
power to make the order, necessarily possessed the power,
upon a violation of the order, to set aside the same and com-
mit the defendant."

In the Bátes case we were passing upon the statute in question, and, in my opinion, we were laying down a salutary rule which should be applied in this case. I believe that the court having the power to make the order of suspension, necessarily possess the power, upon a violation of that order, to set the same aside without being required to establish a violation of any other criminal statute by the defendant; and that the definition of ''good behavior,'' as announced in the majority opinion, is therefore limiting the rule unnecessarily to the destruction of the beneficial object sought. to be accomplished by the statute authorizing the court to suspend sentence upon conditions imposed. I am not prepared to assume, as it would seem to me the majority opinion does assume, that the rights of convicted persons must be safeguarded by a definition of the term ''good behavior,'' announced by this court. I believe that the trial courts can be safely trusted to exercise a wise and beneficent discretion in its conduct of affairs of this kind; and, while we must rely upon a government of law, we must depend upon men, as judges, to exercise reasonable discretion in the enforcement of the law.

In the case of State v. Everitt, 164 N. C. 399, 79 S. E. 274, 47 L. R. A. (N. S.) 848, the Supreme Court of North Carolina, in passing upon a similar question, said:

"It must be clear that the defendant was not entitled to a jury trial to determine whether or not he had violated the conditions upon which the judgment had been suspended. He·was not on trial for any new offense, nor for any offense whatever. When the judgment was suspended the defendant assumed the obligation of showing to the satisfaction of the court, from time to time, that he had demeaned himself as a good' citizen and was worthy of judicial clemency. Whether or not he had so demeaned himself was not an issue of fact to be submitted to a jury, but a question of law to be passed upon by the court. It was a matter to be determined by the sound discretion of the court, and the exercise of that discretion, in the absence of gross abuse, cannot be reviewed here."

It is my opinion that the discretion referred to by the Supreme Court of North Carolina is sufficient protection

of the defendant, and, believing that in the case at bar there is no evidence of abuse of discretion on the part of the trial court, I believe that the majority opinion is erroneous, and therefore dissent therefrom.