No. 29,771.

THE STATE OF KANSAS, *Appellee*, v. W. C. SANDERS et al., *Appellants*.

(295 Pac. 725.)

Opinion filed February 7, 1931.

*John McKenna* and *Charles C. Calkin*, both of Kingman, for the appellants.

*Roland Boynton*, attorney-general, and *Paul R. Wunsch*, county attorney, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal from a judgment in favor of plaintiff holding the defendants liable upon a good-behavior bond given in a prior criminal proceeding of the *State v. W. C. Sanders*.

On September 6, 1926, W. C. Sanders was convicted of a violation of the cigarette law, and the court adjudged that he pay a fine and costs and added the provision that he would be required to give a bond for good behavior for the succeeding two years. The bond was executed by the defendants, of which the following is a copy:

"WHEREAS, At the September term, A. D. 1926, of the district court for the county of Kingman in the state of Kansas, and on the sixth day of September, 1926, in a criminal action then pending in said court, the above-named defendant, Walter C. Sanders, was duly and lawfully convicted of the offense of having in his possession in his place of business cigarettes for the purpose of sale in violation of law; and

"WHEREAS, On the 7th day of September, 1926, said Walter C. Sanders was duly and lawfully adjudged and sentenced by said court to pay a fine of one hundred dollars, on . . . and the costs of said prosecution, and was ordered committed to the jail of Kingman county until said fine and costs were paid; and in addition to the said sentence said court did further order and require said Walter C. Sanders to give security to be of good behavior for a term of two years from the date of said sentence, and that he, the said Walter C. Sanders, stand committed to jail of said county of Kingman, Kansas, until such security be given; but in no case should such imprisonment be longer than two years from the date of said sentence.

"*Now, therefore,* Know all men by these presents, that we, Walter C. Sanders as principal, Ed. Sanders, James Sanders, Leslie Sinnett and C. C. Cannon . . . and . . . as sureties, do hereby undertake and bind ourselves to the state of Kansas for the several amounts set opposite our names, in the total sum of ten hundred dollars, that the said Walter C. Sanders shall and will be of good behavior for the term of two years from the 7th day of September, 1926, and that he, and said Walter C. Sanders, shall not and will not at any time or place within the state of Kansas, during said term of two years, in person or in connection with or by the means or through the agency of others or anyone else, either directly or indirectly, commit again the offense for which he was convicted. (Signatures.)"

Within the two-year period the defendant Sanders was charged with and convicted of a violation of the prohibitory liquor law, and upon appeal judgment was affirmed in the supreme court. (*State v. Hancock,* 127 Kan. 510, 274 Pac. 209.) Shortly afterwards this action was brought to enforce the good-behavior bond. Among other things, defendants answered admitting the execution of the bond, and also that on March 27, 1928, he had been found guilty of unlawful possession of intoxicating liquor, but they claimed that the second offense did not render the defendants liable upon the bond. Upon motion of the plaintiff for judgment against the defendants upon the pleadings, the court gave judgment against them for the

full amount of the bond.  In their appeal defendants contend that by reason of the form and terms of the bond, and the statute under which it was required, the second conviction cannot be regarded as a breach of the bond.  The statutory provisions pertinent to the questions involved, read:

"The court before which any person shall be convicted of any criminal offense shall have power, in addition to the sentence prescribed or authorized by law, to require such persons to give security to keep the peace or be of good behavior, or both, for a term not exceeding two years, or to stand committed until such security be given." (R. S. 62-1504.)

"No recognizance given under the provisions of the second preceding section shall be deemed to be broken unless the principal therein be convicted of some offense amounting in judgment of law to a breach of such recognizance." (R. S. 62-1506.)

The statute is not obscure or ambiguous and specifically authorizes the requirement of bonds in such cases.  In *State v. Chandler*, 31 Kan. 201, 204, 1 Pac. 787, where such a requirement was questioned, it was remarked:  "The court simply followed the law, it simply followed a statute which is open for every person to read." See, also, *State v. Woodard*, 7 Kan. App. 421, affirmed in *State v. Parmenter*, 60 Kan. 857, 56 Pac. 1132; *State v. Webb*, 7 Kan. App. 423.

Attention is called to the case of *Durein v. State*, 38 Kan. 485, 17 Pac. 49, where a good-behavior bond was held to be invalid, but the ground of invalidity was the superadding of terms and conditions not prescribed by the court or by the statute.  One of these was the provision prohibiting Durein from obtaining a permit to sell intoxicating liquors, which was then permissible under the law. The bond in question is free from such a defect and required no more than good behavior.  There are no superadded words in this bond nor any which go beyond those authorized by the statute or the judgment of the court.  Good behavior was required and pledged, and it has been found and adjudged that during the bonded period Sanders had committed a public offense.  It is not easy to say that such an act is not misbehavior.  The legislature did not define the expression good behavior, but it is so plain, so well known and is in such common use that evidently the legislature deemed a definition to be unnecessary.  The term behavior is defined as—

"The act or manner of behaving, either absolutely or in relation to others; mode of conducting one's self; conduct." (Webster's New Internat. Dict.)

It has been said that "good behavior is conduct authorized by law." (*In re Spenser*, U. S. 22 Fed. Cas. 921, 922.) The opposite of good behavior is bad behavior, and it has been defined in this way:

"'Bad behavior' is defined to be such conduct as the law punishes. A person who has committed perjury has been guilty of bad behavior, which will preclude his being naturalized as a citizen under the statute requiring such applicants to have behaved as men of good moral character." (1 Words & Phrases, 661.)

We think that good behavior carries the implication that the conduct of one so bound should be such as complies with the law and not such as is a direct violation of it. Misbehavior is something of which the law takes notice by condemning it and prescribing a punishment therefor. The violation of a law enacted for the safety and welfare of the people of the state, is, we think, within the contemplation of the statute and constitutes a breach of the good-behavior obligation. His conduct was such as the law punishes and such as the court in its discretion deemed necessary for the restraint of Sanders and the protection of the public for the two-year period. Defendants cite common-law cases relating to peace bonds in which some limitations on the liability of the sureties were declared, but the bond we have here was provided for by a statute and the liability thereon is to be determined by its provisions. It will be observed that the statute treats the keeping of the peace and to be of good behavior as different grounds of restraint, and further that bonds may be required for either or both. The one requiring good behavior is more comprehensive than the one for keeping the peace, and at least is broad enough to cover any public offense for which a statutory punishment is prescribed, whether it be a felony or a misdemeanor. An exception has been placed in the statute with respect to libels by providing, in effect, that bonds shall not be required where there is a prosecution and conviction for writing or publishing a libel. (R. S. 62-1505.) Having specifically excepted the offense of libel, there is an implication that bonds might be required in prosecutions and convictions for all other offenses.

There is a further contention that because recitals in the form that was used in preparing the bond relating to the prohibitory law were stricken out, that the bond is not enforceable. Evidently a printed form of bond was used which contained unnecessary recitals and a pen line was drawn over these so they did not become a part of the instrument. The erasure does not affect the obligations writ-

ten in the bond nor warrant the interpretation placed upon the obligation by the defendants.

Another contention is made that the admission made by defendants in their answer that Sanders had been convicted of another offense after the bond was executed is not conclusive on the sureties as to his guilt. The answer contained a denial that Sanders was guilty of the offense of which he was convicted, but when the sureties admitted in their pleading that he had been prosecuted and convicted of the offense charged they were effectually concluded on that question. The judgment of conviction by a court of competent jurisdiction is conclusive on parties and their privies, and was conclusive on the accused and his sureties. As we have seen, the judgment was rendered, and upon an appeal it was affirmed. When defendants admitted that Sanders had been convicted they practically admitted that he had been judicially tried by a court having jurisdiction and that his guilt had been finally determined. After that admission the defendants are not permitted to relitigate the question of his guilt which was the precise issue previously tried and determined.

No error being found in the record, the judgment is affirmed.