**STATE of Maine**

**v.**

**Brian OLIVER.**

Supreme Judicial Court of Maine.

Oct. 23, 1968.

David F. Aldrich, County Atty., South Paris, for plaintiff.

Basil A. Latty, Franklin F. Stearns, Jr., Portland, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

WILLIAMSON, Chief Justice.

The defendant appeals from the revocation of probation and the order that he serve the original sentence of sixty days in the county jail, entered after hearing before the presiding Justice in the Oxford Superior Court. 34 M.R.S.A. § 1633—violation of probation.

In the issues stated in defendant's brief, he asserts: (1) that the Court erred in find-

ing violation of the terms of probation, and (2) that defendant "was denied a fair and impartial hearing as is guaranteed" by the State and Federal Constitutions.

The conditions of probation which it is charged the defendant violated were: (1) To maintain good behavior; (2) to keep an eleven o'clock P.M. curfew, and (3) not to possess any firearms.

The principles governing revocation of probation are well settled. The right to a hearing on revocation is statutory and not constitutional. The proceeding is not a criminal trial. The decision lies in the sound discretion of the Court. The findings of the Justice stand under the familiar "unless clearly erroneous" or "any credible evidence" rule as readily as in other nonjury cases.

In State v. Allen (Me.) 235 A.2d 529 (1967), we considered several of the principles noted above. The United States Supreme Court stated the discretionary nature of the proceeding in these words:

> "The question, then, in the case of the revocation of probation, is not one of formal procedure either with respect to notice or specification of charges or a trial upon charges. The question is simply whether there has been an abuse of discretion, and is to be determined in accordance with familiar principles governing the exercise of judicial discretion. That exercise implies conscientious judgment, not arbitrary action. The Styria, 186 U.S. 1, 9, 22 S.Ct. 731, 46 L.Ed. 1027. It takes account of the law and the particular circumstances of the case and 'is directed by the reason and conscience of the judge to a just result.' Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 75 L.Ed. 520. While probation is a matter of grace, the probationer is entitled to fair treatment, and is not to be made the victim of whim or caprice." Burns v. United States, 287 U.S. 216, 222, 53 S.Ct. 154, 156, 77 L.Ed. 266 (1932).

See also Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1934) (hearing not a constitutional requirement); 24 C.J.S. Criminal Law § 1618(11) pp. 903, 909, 912, 913; 21 Am.Jur.2d Criminal Law §§ 567, 568.

Under the applicable rule the Court was justified in finding the following facts with reference to each claimed violation: (1) On September 30, 1967 about 3:30 A.M. two officers of the state police went to defendant's camp in Locke's Mills to interview a person known to be there concerning damage to an automobile. In the words of one of the officers, "At about this point Brian Oliver, who is seated in the center of the three gentlemen in the next to the last row on this side, came out of another room. And someone other than myself shined a flashlight on Mr. Oliver. Mr. Oliver advised the officer that he'd better take the light out of his eyes or he'd use him as a flashlight. At that point Brian Oliver walked out to myself and Trooper Auger and reached around a corner and turned on an outside light so it lit up the entryway where we were standing. At that point Mr. Oliver turned around. When we first arrived at the house and shined a light in to see if this was the man that was in bed that we wanted to interview, there was a revolver laying on the table. And there was a rifle standing in the corner of the camp, right-hand corner of the camp facing from the door. Mr. Oliver turned around after turning on the light, walked to the revolver, picked up the revolver, spun the cylinder so that I could see it, turned around back to, and you could hear the gun, the revolver clicking, and then placed it on the table. He then walked to the corner of the camp, picked up the rifle, carried the rifle to the table, turned around back to, and I didn't see what he did to the rifle. At that point the gentleman that we wanted to interview had gotten dressed. And we asked him to accompany us and we left and went out to the cruiser. Mr.—or, the party that we wanted to interview sat in the back seat, and Trooper Auger and myself sat in the front seat. I turned on my dome light at which time a shot sounded. At that point I turned out my light inside. And we

ducked in the car. And at that point that was all."

■ The evidence warranted a finding that the defendant possessed firearms in violation of the conditions of probation. (2) On October 5, 1967 about 1:50 A.M. in Vienna, Maine an officer of the State Police in connection with a "safety check", stopped a car in which the defendant was a passenger. The doors of the car were locked and the windows tightened. The defendant and also the driver refused to open the windows or to talk with the officer. A holster with a gun in it was observed on the front seat. The driver was taken to the county jail and the defendant, the witness officer believed, was given a ride home by another officer. No charge was made against the defendant.

■ The defendant was scheduled to go to work in a bakery in Portland on an early morning shift. The eleven o'clock curfew was stated by the probation officer not to apply if the defendant was going directly to or from his work.

The presiding Justice, in finding a breach of curfew, said:

"The fact that he might have been going to work at 3:00 o'clock or 5:00 o'clock doesn't make any difference. They gave him an opportunity apparently to stretch beyond 11:00 o'clock as long as it was for working. But he wasn't working when he was out after midnight with somebody who was currently being looked for, and they tried to apprehend his companion. And here he sits in the car, locks it, refuses to talk and answer the officer or cooperate in any way."

Common sense tells us that the finding was correct. (3) The third charge of failure to maintain good behavior was not, in our view, established on the record. Good behavior is conduct conformable to law. "Every order granting probation must be conditioned upon 'good behavior,' which means conduct conforming to the law." State v. Chesnut, 11 Utah 2d 142, 356 P.2d 36, 38 (1960); Ex Parte Hamm, 24 N.M. 33, 172 P. 190, L.R.A.1918D, 694 (1918); State v. Hardin, 183 N.C. 815, 112 S.E. 593 (1922); 21 Am.Jur.2d Criminal Law § 554.

The acts complained of, namely, breaking curfew and possession of firearms, were not necessarily violations of the law, but of the conditions of probation. While the conduct of the defendant warranted the characterization of bad behavior in the common usage of words, nevertheless, in the present context, it was behavior conformable to the law. As we read the reasons given by the presiding Justice for the decision, he did not consider behavior, good or bad, within the narrow limits we hold applicable. Further, the State in brief and argument at no time suggested a violation of law by the defendant as a ground for the revocation. Cf. State v. Allen, supra, in which bad behavior was sufficiently established by a finding that the defendant committed a criminal act.

■ Placing the finding of behavior at one side, we are of the view that the violation of probation from the breach of curfew, and the possession of firearms, were properly determined within the discretion of the presiding Justice.

■ Evidence bearing upon the seriousness of the charges against the defendant, including the nature of his conduct, was properly before the presiding Justice for consideration in reaching his decision.

■ The hearing met every test of fairness and impartiality. There is no evidence to support the defendant's claim otherwise. It is unnecessary, therefore, to reach into the field of constitutional law for our decision. State v. Allen, supra.

The entry will be

Appeal denied.