STATE EX REL. GASH *v.* MORGAN SUPERIOR COURT AND LITTELL, JUDGE.

[No. 671S158. Filed May 25, 1972.]

*Ferd Samper, Jr., Samper and Samper,* of Indianapolis, for relator.

*Honorable Noble K. Littell,* of Martinsville, for respondent.

PRENTICE, J.—This matter is before us on a petition for writ of mandate and the return thereto. The Court having reviewed the same and having heard arguments of counsel heretofore took the matter under advisement. And the Court now being fully advised now finds for the petitioner and that said writ should issue.

IT IS, THEREFORE, CONSIDERED, ADJUDGED and DECREED by the Court that the respondents, the Morgan County Superior Court and The Honorable Noble K. Littell, as Judge thereof, set aside its order of revocation and commitment heretofore entered and expunge such entries in said cause as may exist in its order book reflecting such revocation and commitment.

Relator had previously entered a plea of guilty of the crime of disorderly conduct in respondent court. Upon his plea of guilty the relator was sentenced to 180 days at the State Farm and fined $10. The sentence was suspended "upon the good behavior of the defendant."

Subsequently the prosecuting attorney of Morgan County filed a petition to revoke the suspended sentence alleging that relator had drawn a shotgun and threatened the person of one Fount Brock. The respondent judge conducted a hearing on the prosecuting attorney's petition to revoke the suspended sentence following which the suspension was revoked and relator ordered committed to the Indiana State Farm for 180 days. Relator seeks a writ of mandate to recall his commitment and expunge the entries revoking the suspension of his sentence.

Our research of the questions presented by these proceedings brings us unequivocally to the following conclusions:

(1) In Indiana, the suspension of sentences and the revocation thereof is governed exclusively by statute.

(2) Good behavior is, by statutory law, a condition attendant to every suspended sentence; and, although a court may impose additional reasonable conditions, the use of the words "upon good behavior" adds nothing to an order of suspension.

(3) Good behavior by case law, means behavior conforming to law, i.e. refraining from the commission of criminal offenses.

(4) A suspended sentence may be revoked only by reason of a violation of specified terms attached to the probation or for the commission of a criminal offense.

(5) If the basis for revocation is the commission of another offense, there must have been a prior determination of guilt with respect thereto.

The question does not appear to have been directly ruled upon in this state, and although there is some authority to the contrary, the vast majority of jurisdictions passing upon the question have held that courts may not, in the absence

of a statute, suspend a sentence conditioned upon the "good behavior" of the defendant. The decisions so holding have been predicated upon the theory that the sentence in a criminal case should be definite and certain and not dependent upon any contingency or condition. 21 Am. Jur. 2d, p. 530, *Criminal Law*, § 560. It was so held in Indiana as early as 1819. *Morris* v. *State*, 1 Blackford 37.[1]

---

1. Sentences in criminal cases should be definite and certain and not dependent upon any condition or contingency, and where no statute is found to authorize it, a sentence in the alternative is bad for uncertainty. *State* v. *Sturgis, et al.*, Sup. Jud. Ct. of Maine (1912), 85 A. 474.

The defendant was sentenced to imprisonment, and it was "further ordered by the court that the operation of this sentence shall be suspended during such time as the defendant shall keep the peace with all mankind, and desist from all unnecessary use of intoxicating liquor, and refrain from becoming intoxicated." The suspension was held to be unauthorized by law. *In Re Strickler*, 5 Kan. 700, 33 P. 620.

The defendant was sentenced to pay a fine and to work 30 days on the streets, with provision, "Sentence suspended on his promise not to go to this house again." Defendant paid the fine and costs. Subsequently the trial court revoked the suspension. The reviewing court reversed the lower court's denial of habeas corpus. Citing *Tanner* v. *Wiggins*, 54 Fla. 203, 45 So. 459 and *State* v. *Sturgis, supra*, the court said:

"Whenever the question has arisen and been passed on, it has been decided, practically without dissent, that in passing sentence on a person convicted of an offense the court has no power to provide that the imprisonment of the defendant shall begin at some future, indefinite time, depending on the happening of a contingency." Acknowledging cases to the contrary, it pointed to 8 R.C.L. 250-254, wherein it is said that such stays involve the exercise of the pardoning power which is confined exclusively to the executives and may not be exercised by the courts. *Daley* v. *City of Decatur*, Ct. of App. of Ala. (1921), 90 So. 69, additional cases are collected at 33 LRA (NS) 112.

The Supreme Court of Mississippi in 1912 held that a court had no power, inherent or otherwise, to suspend execution of a sentence during good behavior. It was pointed out that no such power had been conferred by the constitution or statutes of this state. *Fuller* v. *State*, 57 So. 806.

The Supreme Court of the United States, with reference to the authority of federal courts to suspend sentences, after reviewing the laws of the several states and acknowledging the existence of such a practice in some of the districts said:

"* * * Albeit this is the case, we can see no reason for saying that we may now hold that the right exists to continue a practice which is inconsistent with the Constitution, since its exercise, in the very nature of things, amounts to a refusal by the judicial power to perform a duty resting upon it, and, as a consequence thereof, to an interference with both the legislative and executive authority as fixed by the Constitution. * * *" *Ex Parte United States*, 242 U. S. 27, 37 S. Ct. 72, 61 L. Ed. 129, 145.

The authority for Indiana courts to suspend sentences, which is not to be confused with its authority to grant stays in aids of its judicial functions, is governed exclusively by statute. 1961 Attorney General Opinions 303. To properly interpret such statutes, it is appropriate to acquaint ourselves with the law as it existed prior to the legislative enactment, and to do this requires us to examine the decisions of this Court upon the subject prior to such enactments and the decisions of sister states operating without benefit of statutes.

In 1819, this Court held that in the absence of statute, the rule is that a judgment and sentence must not be dependent upon any contingency, or subject to any future decision, but must be certain and final. *Morris* v. *State, supra.*

In 1883, we held that the Superior Court of Marion County was without authority to suspend the sentence of the convicted defendant, who was over the age of twenty-one, under the statute which then provided:

---

The Supreme Court of South Dakota in 1927 held that it had no power to suspend sentences, notwithstanding statutes purporting to grant such authority, saying that such was the exclusive power of the executive department. The statutes were not set forth in the opinion, hence we do not know the extent of the authority purportedly granted. *Friske* v. *Circuit Court etc.*, 214 N. W. 812.

The suspension was held void but the sentence valid and enforceable, even after its term had expired in *State* v. *Abbott et al.*, Sup. Ct., South Carolina (1911), 70 S. E. 6. The same result was reached in *Spencer* v. *State*, Sup. Ct. of Tenn. (1911), 140 S. W. 597.

The Court held that when a judgment of imprisonment is imposed, the defendant should be forthwith committed to the proper officers for incarceration; and where this is not done, and the court makes an order under which the defendant is discharged from custody, it has no power or jurisdiction, after the lapse of the time involved in the sentence and after the term, to issue a commitment on such judgment. *Ex Parte Clendenning* S. Ct. of Okla. (1908), 97 P. 650.

The Supreme Court of Idaho in 1911 said "We know of no authority in our statutes for such judgments as the ones entered in said cases. The district court has no authority, after sentencing a prisoner to a term of imprisonment, to direct his release, with or without bond, making such release subject to recall by the judge or court, and thereafter require the defendant to serve out the suspended term of imprisonment." Habeas Corpus was granted in this case, the court holding that although the suspension was improper, the court had no authority to then commit the defendant. *Ex Parte Peterson*, 113 P. 729.

"If the accused plead guilty, such plea shall be entered on the minutes, and he shall be sentenced, or he may be placed in the custody of the sheriff until sentence. * * *." (§ 1767 Rev. Stat. 1881). *Smith* v. *Hess, Sheriff*, 91 Ind. 424.

A few years later, under the same statute, we held that upon the defendant's plea of guilty, the court could do nothing further except either to sentence him at that time or to place him in the custody of the sheriff until such sentence; and that if an agreement for suspension of the sentence, upon condition that he not commit another similar offense, had in fact been made, with or without the consent of the court, or during good behavior, it was nevertheless void; and there was no authority for letting him depart from the court without sentence. In this case, the defendant had not been sentenced, but the arrangement alleged by the defendant amounted to a de facto suspension, which we held void while enforcing the sentence. *Gray* v. *State* (1886), 107 Ind. 177, 8 N. E. 16.

Viewing the statutes as they developed, we find that the first was adopted in 1907 (ch. 236). By series of amendments and additional enactments, it has evolved into Burns Ind. Stat. Ann., 1956 Repl., §§ 9-2209, 2210 and 2211. The 1907 Act gave the court the power to suspend sentences, provided for control during suspension and further provided for revocation. From the beginning, the concept of suspension pending "good behavior" both for misdemeanors and for most felonies, was obvious, and it was provided "* * * but such order of suspension of such judgment and parole shall only be effective and operate during good behavior of such person * * *." It has been repeatedly held that "good behavior" means conduct conforming to law, i.e. abstaining from criminal acts.[2] Addition-

---

2. *In re Weber*, Court of Appeals of Ohio, 1945, 61 N. E. 2d 502, held good behavior to be an accepted phrase in connection with probationary sentence and to mean conduct conforming to law, citing 15 Am. Jur. 138.

The Court of Appeals of New York regarded the right to suspend sentences as inherently a judicial prerogative and amply grounded in the common law. The ruling in the case, however, was that a statute authorizing the court to suspend sentences during good behavior was a valid exercise of legislative power under the constitution *People ex rel. Forsyth* v. *Court of Sessions of Monroe County*, 1894, 36 N. E. 386.

A similar statute adopted by the State of Texas in 1931 provided: "1. When sentence is suspended, the judgment shall be that sentence of the judgment of conviction shall be suspended during the good behavior of the defendant. 2. By "good behavior" is meant that the defendant shall not be convicted of any felony, or any character or grade of the offense of theft, embezzlement, swindling, conversion, theft by bailee, or any fraudulent acquisition of personal property." Vernon's Ann. C.C.P. Art. 777. (This act has since been repealed by Acts of 1965, 59th Leg., Vol. 2, p. 317, ch. 722; Vernon's Ann. C.C.P. (1966), Arts. 42.12, 42.13. The current act provides that the terms of probation "* * * must include, but are not limited to, the requirements that a probationer: (1) commit no offense against the laws of this or any other state or of the United States. * * *"

The Code section authorizing suspension of defendant's sentence during "good behavior", defined as meaning that offender shall not be convicted of "any other crime" during the suspended sentence, does not refer only to a crime against the laws of Louisiana, but includes all convictions, whether local or federal, such as a conviction in federal court for using mails to conduct a lottery, notwithstanding it was not an offense under the state law. *State* v. *Gordon*, 38 So. 2d 794, 796, 214 La. 822.

Where a judgment in a criminal case has been suspended on condition of payment of costs and goods behavior, the term "good behavior" means conduct that is authorized by law, and "bad behavior" means conduct such as the law will punish. *State* v. *Hardin*, 112 S. E. 593, 594, 183 N. C. 815.

"Good behavior" is conduct authorized by law. *United States* v. *Hrasky*, 88 N. E. 1031, 1033, 240 Ill. 560, 130 Am. St. Rep. 288, 16 Ann. Cas. 279. *In re Spencer*, 22 Fed. Cas. 921, 922.

"Good behavior", within judgment suspending prison sentence on condition that defendant be and remain continuously on good behavior, means conduct conforming to law. *State* v. *Pelley*, 20 S. E. 2d 850, 858, 221 N. C. 487.

"Good behavior" as used in order suspending sentence while defendant is of good behavior, means obedience to and conformity with criminal laws of state; the demeanor of law-abiding citizen. *State* v. *Millner*, 83 S. E. 2d 546, 547, 240 N. C. 602.

Term "good behavior" within good behavior bond carries implication that principal's conduct must comply with law (Rev. St. 1923, 62-1504, 62-1506). *State* v. *Sanders*, 295 P. 725, 726, 132 Kan. 450.

"Good behavior," as used in an order suspending sentence upon a defendant during good behavior, means merely conduct conformable to law. *Ex parte Hamm*, 172 P. 190, 191, 24 N. M. 33, L.R.A. 1918D, 694.

A sentence is suspended during "good behavior", which means that defendant shall not be convicted of any felony, etc., regardless of whether such conviction is based on an offense committed before or after the offense for which sentence was suspended. *Cooper* v. *State*, Tex. Cr. App., 230 S. W. 2d 818, 819. This case was decided under Vernon's Ann. C.C.P. Art. 777, *supra*.

Every order granting probation must be conditioned upon "Good behavior", which means conduct conforming to the law. *State* v. *Chesnut*, 356 P. 2d 36, 38, 11 Utah 2d 142.

Every order granting probation must be conditioned on "Good behavior", which means conduct conforming to law. *State* v. *Oliver*, Me., 247 A. 2d 122, 124.

ally, it was provided "* * * In case the offense of which person shall have been convicted as aforesaid is a misdemeanor only, or in counties where there is no probation officer, such court shall have power to suspend the judgment and parole such persons aforesaid, upon such terms and conditions as to

Where the sentence had been suspended, by authority of statute, during good behavior, and a hearing was later had upon an order to show cause why suspension should not be revoked for violation of a gaming law, the suspension was revoked. But on petition for habeas corpus, the Supreme Court discharged the petitioner because, although the gaming in which he had participated was a violation of the statute as it existed at the time of the suspension, the statute had been amended and his gaming was not an offense at the time he engaged in it. The court said:

"* * * In this case the court suspended the sentence 'during good behavior.' The determination of this case turns upon the proper definition of these words as used in the connection and the circumstances under which they were used. It was suggested by the Attorney General upon argument that, as the court might suspend the sentence upon any terms which he deemed advisable, he might determine for himself at any time what he considered good behavior within the meaning of the terms used. The effect of such a proposition would be to leave resting, within the breast of the court an arbitrary power to determine for himself what he considered good behavior or misbehavior as applied to each individual defendant. The judge might require more in one case and less in another. Good behavior in one district court might mean a very high standard of conduct, while in another a much lower standard would be a measure to be applied. Such arbitrary power does not inhere in any judicial or other officer. Good behavior must be a legal good behavior, applicable alike in all instances, as otherwise people dealing with courts will ever be at the mercy of the whim, the caprice, or the peculiar views of the particular judge, presiding over the court. The court, under our statute, has power to make any terms and conditions upon the suspension of a sentence, and, if it is desired to retain in the breast of the court the power to determine at any time whether the sentence shall be enforced, the order of suspension shall so specify. * * * * *

The holding, in effect, is that good behavior means conducting oneself conformably to law, and various definitions from law dictionaries are quoted to that effect. * * * * *

We deem the only safe definition of good behavior, when the same is not restricted or modified by accompanying language, to be conducted in conformity to law." *Ex Parte Hamm, supra.*

A more rigid view has been taken by the Court of Appeals of Kentucky. Under Ky. St. § 2557b, subsec. 3, as amended by Acts 1916, c. 53, relating to bonds required on a conviction for a violation of the local option law, Act March 10, 1894, a conviction for playing poker is not a breach of a bond for "good behavior"; that term meaning to refrain from future violations of the local option law only. *Baker* v. *Commonwealth*, 205 S. W. 399, 401, 181 Ky. 437.

such parole as such court may in its judgment and discretion deem right and proper, and by its judgment fix and provide." It should be noted that specific conditions, i.e. conditions other than "good behavior" were authorized only with respect to misdemeanors and with respect to felonies in counties having no probation officer. Revocation of suspension was provided for, without notice and in the absolute discretion of the court.

The 1909 amendment appears merely to have added a requirement of employment to the release of felons and for reporting and formal revocation of the sentence upon termination of the minimum period; and the 1919 amendment authorized counties having a separate criminal court to appoint a probation clerk and provided for salaries and record keeping.

The statutes relating to suspension and parole received a general overhaul in 1927 (Ch. 210, §§ 1, 2 and 3). Our concern is with the following: the concept of "good behavior" was retained. The right to attach specific conditions was extended to all suspensions. The authority of the court to revoke suspension was conditioned upon a hearing, and the conditions authorizing revocation were prescribed as follows:

> "If it shall appear that the defendant has violated the terms of his probation or has committed another offense, the court may revoke the probation or the suspension of sentence and may impose any sentence which might originally have been imposed."

Thus, it will be noted, the court's right to revoke was restricted.

The 1945 Act (Ch. 50, § 1) made no change, except as to the compensation to be paid to probation clerks.

From the foregoing, it appears clear that the authority of the court, both to suspend sentences and thereafter to revoke such suspensions, is statutory, and in view of the existing case law, it is also clear that "good behavior" means lawful conduct, i.e. abstaining from criminal acts, that such conduct is a condition of every suspension, and that the

court may, in addition thereto, impose other reasonable conditions.[3] Such additional conditions, however, must be specific and specified in the order of suspension. Otherwise, there would be no means of subsequently determining whether or not they had been violated, and the power to revoke would be arbitrary, as it was under the 1907 Act, but changed by the Act of 1927. At this juncture, it seems clear that since "good behavior" attaches as a matter of law to all suspensions, the addition of the words "during good behavior" to the order of suspension is merely declaratory of the conditions imposed by law and in no sense a declaration of conditions over which the court has any power. In this context, and in the event of suspension and an alleged violation, the court must have a hearing to determine if a defendant has violated the terms of the suspension, either by (1) committing another offense and/or by (2) violating one or more of the additional conditions specified and imposed by the court. With reference to the former, we could then have an arguable question as to whether the legislative intent was to authorize the court to revoke suspension if it merely found that the defendant had committed another offense, although such offense may not have been formally charged and determined, or whether a conviction or a plea of guilty would be a condition precedent. However, we have been relieved from the burden of that determination by the most recent amendment (Acts of 1967, Ch. 204, § 1, Burns Ind. Stat. Ann. 1971 Supp. § 9-2211). This amendment changed the last sentence of this section from "If it shall appear that the defendant * * * *has committed another of-*

---

3. A result different from those set forth under note 1 was reached by the Supreme Court of North Carolina in 1913, where the court said:
"The power to suspend judgments exists, but should be exercised fairly and reasonably, so as not to deprive the defendant of the right to assign errors and review the proceedings in the court below, if he desires to do so, and with due regard to his other rights. He must not be oppressed or unduly burdened by the suspension. There was no abuse of discretion in this case nor did the court abuse its authority. The suspension was made with the consent of the defendant, and for his benefit, and he has now no reason to complain, having violated his own voluntary promise to demean himself as a good citizen should do." *State* v. *Everett* (1913), 79 S. E. 274.

*fense,* the court may revoke * * *," to "If it shall apear that the defendant * * * *has been found guilty of having committed another offense,* the court may revoke." (Emphasis ours). The reference, in past tense, to a finding of guilty precludes debate. If the revocation is for breach of the general condition of good behavior, there must have been a determination of guilt between the date of suspension and the date of the revocation hearing.

We do not pass upon the requirement attendant to a revocation of suspension for violation of specific conditions lawfully imposed by a court, but, under the circumstances of this case, the writ should issue.

Hunter, J., concurs, DeBruler, J., concurs with opinion; Arterburn, C. J., dissents with opinion in which Givan, J., concurs.

### CONCURRING OPINION

DeBRULER, J.—I concur fully in the majority opinion and add these remarks. The revocation of a suspended sentence is governed by I.C. 1971, 35-7-2-2, Burns § 9-2211, which reads:

"At the close of the probation period, or whenever directed to do so, by the court, the probation officer shall report to the court, with a statement of the conduct of the probationer while on probation. The court may thereafter discharge the probationer from probation, or may extend the probation period, as shall seem advisable. At any time within the probation period, the probation officer may arrest the probationer only upon warrant issued by the sentencing court. Thereupon, the probationer shall forthwith be taken before the court for hearing, where probationer may be represented by counsel of his choice. At any time within the maximum period for which the defendant might originally have been committed, but in no case to exceed five years, the court may issue a warrant and cause the defendant to be arrested and brought before the court. *If it shall appear that the defendant has violated the terms of his probation or has been found guilty of having committed another offense, the court may revoke the probation or the suspension of sentence and may impose any sentence which might originally have been imposed.*" (Emphasis added.)

The last sentence states there are only two grounds for the revocation of a suspended sentence: (1) If the person has violated the terms of his probation, or, (2) if he has been found guilty of having committed another offense.

It is undisputed that the prosecutor did not allege or prove that appellant had been found guilty of another offense. Therefore if appellant's original sentence was to be ordered served it had to be on the grounds that appellant had violated the terms of his probation.

However, petitioner was never placed on probation and was never subject to any intelligible terms or conditions of probation. The status of being on probation is *not* the same as being free under a suspended sentence. This is clear from *Davis* v. *State* (1971), 256 Ind. 58, 267 N. E. 2d 63, where the petitioner was convicted on February 11, 1966, and sentenced to one to ten years in prison. Petitioner was placed on probation for *only two years*. Petitioner's suspended sentence was revoked for an act occurring *after* his probationary term was up but within five years of his conviction. This was in accordance with § 9-2211 and proves conclusively that a convicted person may be serving a suspended sentence and not be on probation.

To place a convicted person on probation it is of course *necessary* to suspend his sentence; however, that alone does not create the status of probation. To place the person in the status of probation the trial court must set out some terms or conditions the person must comply with, which are intended to insure some form of supervisory control over the person. Suspending a sentence during "good behavior" does not place the person on probation within the meaning of § 9-2211 because there are not intelligible terms or conditions by which the convict may guide his behavior and no standards by which the State may judge that the probationary status should be revoked. A convicted person free under a suspended sentence

but not on probation is not subject to supervisory control and his suspension can be revoked only if he has been found guilty of another offense. The whole tenor of § 9-2211 implies this distinction between being on probation and being free under a suspended sentence. Once this distinction is grasped then it is obvious that petitioner here was never on probation, never subject to probationary terms or conditions, and therefore his suspended sentence could not be revoked for a violation of probationary terms.

## DISSENTING OPINION

ARTERBURN, C. J.—I regret that I am unable to follow the reasoning of the majority opinion in this case. "Good behavior" has a very definite meaning in my opinion. In this case the sentence was revoked because of a violation of "good behavior" and a hearing was held and the hearing showed that the defendant had drawn a shotgun and threatened a person. To me this is very plainly bad behavior and not "good behavior."

I do not think the term needs to be made more specific. If one were to do so there would always be omissions and technical difficulties. If "good behavior" meant a conviction of a crime the statute could well have said so.

I am reminded of the fact that Judges serve so long as they "behave well." I feel that has a very definite meaning also.

I do not think that it takes very much explanation for the average person to know what "good behavior" means. I believe the majority opinion unnecessarily hamstrings the trial judge and creates needless refinements and technicalities. We already have too much of this in the criminal procedure.

Givan, J., concurs.

NOTE.—Reported in 283 N. E. 2d 349.