**Bruce Allen THORNTON, Jr., Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 53A05–0212–CR–595.**

Court of Appeals of Indiana.

July 29, 2003.

Mary Joan Hamilton, Deputy Public Defender, Bloomington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Bruce Allen Thornton, Jr., appeals the revocation of his probation. Thornton questions whether the trial court erred in revoking his probation for resisting law enforcement after a jury had acquitted him of a criminal charge of resisting law enforcement based upon the same facts. We affirm.

## FACTS AND PROCEDURAL HISTORY

On June 18, 2002, Thornton agreed to plead guilty to one count of receiving stolen property as a Class D felony. Pursuant to the agreement, the court would sentence him to two years in the Indiana Department of Correction, suspend all but ninety days of the sentence, and order one year of probation.

On August 24, 2002, around 4:00 p.m., Ellettsville Police Officer Alva Bohall, who was traveling in his patrol car on State Road 46, observed Thornton traveling in the opposite direction on State Road 46 in a red low-rider truck with an improperly displayed license plate. Officer Bohall turned his car around to follow Thornton, whose truck was a few cars ahead of Officer Bohall. Officer Bohall did not turn on his lights or siren and did not follow Thornton when he turned into a trailer park.

About 6:20 p.m. that same day, Officer Bohall again saw Thornton's truck pass him going the opposite direction on State

Road 46. Officer Bohall noted that Thornton's license place had been moved to the opposite side of the rear window in Thornton's truck, but it was still improperly displayed. Officer Bohall turned his car around, turned on his lights and siren, and attempted to follow Thornton. As Officer Bohall approached Poplar Drive, he noticed that Thornton had turned left to go down Poplar. Because of safety concerns regarding other traffic in the area, Officer Bohall had to continue driving westbound on State Road 46 rather than turn onto Poplar Drive. As Officer Bohall passed Poplar Drive, he made eye contact with the passenger in Thornton's car, but did not signal the passenger. Officer Bohall then turned his car around to follow Thornton, but he could not find Thornton's truck.

Officer Bohall began searching the neighborhood around Poplar Drive for Thornton's truck. As he was driving around, he saw three children outside playing and asked them if they had seen a red low-rider. The children pointed Officer Bohall in the direction the truck had gone. Officer Bohall followed the children's report and saw Thornton driving east on Sycamore.

At that point, Officer Bohall already had his lights and siren activated. He turned onto Sycamore and was approximately seven or eight car lengths behind Thornton's truck. No other cars were on the street with them. Officer Bohall drove seventy or seventy-five miles per hour and managed to get within four car lengths of Thornton's truck. Thornton then disregarded a stop sign and "ramped"[1] an intersection. When Officer Bohall ramped the same intersection, the bottom of his car hit the ground, which caused a safety mechanism to turn off the fuel to the en-

gine, and his car stalled. By the time Officer Bohall stopped his car and opened the trunk to override the safety mechanism, Thornton had left the area.

On August 26, 2002, the State filed a petition to revoke Thornton's suspended sentence. On August 27, 2002, the State filed a criminal information charging Thornton with one count of resisting law enforcement as a Class D felony.[2] A two-day jury trial was held, after which the jury found Thornton not guilty of resisting law enforcement. Immediately after the jury returned its verdict, the trial court held a probation revocation hearing. At the hearing, neither party presented additional evidence; rather, each relied on the evidence presented at the criminal trial. Based on that evidence, the trial court found "it's more likely true than not true that [Thornton] committed the offense of Resisting Law Enforcement, a Class D Felony," (Tr. at 242), and ordered Thornton to serve 118 days in jail and fourteen days on home detention.

### DISCUSSION AND DECISION

Thornton claims the evidence was insufficient to support the revocation of his probation. We disagree. Probation revocation proceedings are civil in nature. *Washington v. State*, 758 N.E.2d 1014, 1017 (Ind.Ct.App.2001). Accordingly, the State needs to prove a violation of probation by only a preponderance of the evidence. Ind.Code § 35–38–2–3(e). When reviewing the trial court's determination that the appellant violated his probation, we may neither reweigh the evidence nor reassess the credibility of the witnesses. *Packer v. State*, 777 N.E.2d 733, 740 (Ind. Ct.App.2002). Rather, we must look at the evidence most favorable to the trial court's

---

**1.** Ramping an intersection means "the wheels come off the ground." (Tr. at 60.)

**2.** Ind.Code § 35–44–3–3.

judgment and determine whether substantial evidence of probative value supports that judgment. *Id.* If so, we must affirm. *Id.*

If a person on probation commits another crime, the trial court may revoke probation. Ind.Code § 35–38–2–1(b). Immediately before the trial court found Thornton violated his probation by resisting law enforcement, a jury had acquitted Thornton of committing that crime. Thornton claims his acquittal should prohibit the trial court from revoking his probation for the commission of that crime.

We were faced with a similar argument in *Jackson v. State,* 420 N.E.2d 1239 (Ind. Ct.App.1981). There, as here, Jackson was placed on probation, the State petitioned to revoke the probation because Jackson had committed a new crime, and a jury acquitted Jackson of the new criminal charges upon which the probation revocation was based. *Id.* at 1239–40. After a hearing, at which "the evidence presented at Jackson's criminal trial was re-examined, additional testimony was taken, and the limited rights afforded an alleged probation violator were fully protected," *id.* at 1242, the trial court revoked Jackson's probation.

Jackson appealed, claiming the revocation was contrary to law because it violated principles of collateral estoppel and double jeopardy. *Id.* at 1240. Our discussion therein is informative:

> In *State ex rel. Gash v. Morgan Superior Court* (1972) 258 Ind. 485, 283 N.E.2d 349, our Supreme Court ruled, *inter alia,* that if probation revocation was based upon the commission of another offense an adjudication of guilt must precede the revocation. 283 N.E.2d at 355 (interpreting former I.C. 35–7–2–2 (amended 1976 & 1977)); *accord, Ewing v. State* (2d Dist.1974) 160 Ind.App. 138, 310 N.E.2d 571. *Gash* was overruled by

> *Hoffa v. State* (1977) 267 Ind. 133, 368 N.E.2d 250, wherein the court stated, "It is not necessary that a criminal conviction precede revocation of probation for unlawful conduct; it is only necessary that the trial judge, after a hearing, finds such unlawful conduct to have occurred." 368 N.E.2d at 252. This change of position was merited because, as stated by the Court:

>> "(O)ur trial court's power to suspend the sentence and use probation is an important judicial tool in the administration of criminal justice. In order to preserve this power we must, therefore, impose only reasonable restrictions in its exercise. This becomes a matter of judicial necessity if we are to encourage the use of probationary authority as a matter of grace in the administration of justice." 368 N.E.2d at 252 (original emphasis).

> *Accord, Curtis v. State* (2d Dist.1977) [175] Ind.App. [76], 370 N.E.2d 385.

> *Culley v. State, supra* [179 Ind.App. 345], 385 N.E.2d 486, the latest in this line of cases, involved a situation analogous to ours. Culley was placed on probation after pleading guilty to a charge of burglary. Two conditions of his probation were that he avoid places where drugs were sold or used, and that he refrain from associating with persons of harmful character. A few months later Culley and another were in a hotel room when a search executed pursuant to a warrant uncovered some marijuana and heroin. Culley's companion was found to be carrying heroin and marijuana. Although Culley was acquitted of possession of marijuana and maintaining a common nuisance, his probation was revoked when the trial court found a violation of the two conditions stated above. In rejecting Culley's argument that the revocation proceedings were

barred by his acquittal under the double jeopardy doctrine, the court stressed four points: 1) double or former jeopardy applies only to reprosecution for the same offense; 2) the legislature alone establishes criminal offenses; 3) granting probation is a matter of grace resting in the sound discretion of the trial court; and 4) the trial court is given wide latitude in fixing conditions of probation. In summation the Court stated, "(A) probation condition is imposed by the *court*, not the legislature, and a breach thereof is *not* an adjudication of guilt. Hence, we hold that a violation of a condition of probation does not constitute an offense within the purview of double jeopardy analysis." 385 N.E.2d at 488 (original emphasis). As previously noted, however, the exact question before us was not reached in *Culley*.

There are two widely differing views toward probation revocation proceedings based upon the commission of a criminal offense after the probationer has been acquitted of the offense. See Annot., 76 A.L.R.3d 564 (1977 & Supp.1980). The minority position prohibiting revocation is characterized by *Illinois v. Grayson* (1974) 58 Ill.2d 260, 319 N.E.2d 43, cert. denied, (1975) 421 U.S. 994, 95 S.Ct. 2001, 44 L.Ed.2d 484. The *Grayson* Court overturned an intermediate appellate decision which allowed revocation after acquittal based on the different burdens of proof in the two proceedings. In so doing the Court focused on the doctrine of collateral estoppel and the practical ramifications of a revocation proceeding subsequent to acquittal:

> "(W)e are not persuaded that the difference in the burden of proof between a criminal trial and a probation revocation proceeding should dictate the result in this case. While the differences between a criminal trial and a probation revocation hearing are substantial, and we see no reason

to modify our determination in *People v. Crowell*, 53 Ill.2d 447, 292 N.E.2d 721, that violations of conditions of probation need be proved by only a preponderance of the evidence, we believe those differences cannot fairly serve to permit relitigation of the identical issue upon the same evidence. (*People v. Armstrong*, 56 Ill.2d 159, 306 N.E.2d 14.) Although proceedings may be civil in form, they may be criminal in nature (*United States v. United States Coin and Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434), and the individual facing probation revocation may lose his liberty just as swiftly and surely as a defendant in a criminal case." *Illinois v. Grayson*, supra, 319 N.E.2d at 45–46.

Typical of the majority position allowing revocation is *Johnson v. Georgia* (1977) 142 Ga.App. 124, 235 S.E.2d 550, *aff'd*, 240 Ga. 526, 242 S.E.2d 53, *cert. denied*, (1978) 439 U.S. 881, 99 S.Ct. 221, 58 L.Ed.2d 194. In determining that revocation after acquittal was consistent with Georgia law and the Constitution, the Court stressed the discretionary nature of granting probation and the minimal procedural rights that attach to revocation proceedings, 235 S.E.2d at 551 (citing *Morrissey v. Brewer* (1972) 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484), the lesser burden of proof required to justify revocation of probation under Georgia law, 235 S.E.2d at 551–52, and the fact that revocation proceedings are more civil than criminal in nature and there is no prohibition on the state's imposition of both a civil and a criminal penalty for the same act. *Id.* at 552. The Georgia court's treatment of this latter rationale is particularly pertinent to Jackson's double jeopardy argument and merits extensive quotation:

> "Double jeopardy limitations are traditionally viewed as applicable only

to successive prosecutions for the same offense. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469. As stated above, a probation revocation hearing is only a hearing to determine whether the conduct of the defendant during the probation period has conformed to the terms and conditions outlined in the order of probation. *Dutton v. Willis*, 223 Ga. 209, 211, 154 S.E.2d 221, 223; *Scott v. State*, 131 Ga.App. 504, 206 S.E.2d 137. The Fifth Amendment prohibition against putting any person twice in jeopardy of life or limb applies only to twice subjecting an individual to criminal processes for the same offense against the same sovereign; there is no bar to the state's imposing both a civil and a criminal penalty for the same act. *Alexander v. State*, 129 Ga.App. 395, 199 S.E.2d 918. It is generally accepted in courts of this state as well as in the federal courts, that a proceeding to revoke a probated sentence is not a criminal proceeding." 235 S.E.2d at 552.

As noted in the *Hoffa–Culley* line of cases Indiana adheres to the position that probation is largely a matter for a trial court's sound discretion. Additionally, I.C. 35–7–2–2(d) (Burns Code Ed.1979), only requires the state to prove a probation violation by the civil preponderance standard rather than beyond a reasonable doubt. Finally, it is our opinion that the double jeopardy analysis of *Johnson* is but a logical extension of the Court's analysis in *Culley v. State*, supra, 385 N.E.2d at 488. We therefore adopt the majority position represented by *Johnson v. Georgia*, *supra*. Any other conclusion would be contrary to the clear direction of recent Indiana case law in this area.

*Id.* at 1240–42 (emphasis in original; footnotes omitted).

Based on that review of the law, the *Jackson* court held that the trial court did not abuse its discretion by revoking Jackson's probation. *Id.* at 1242. Given the state of the law in Indiana, we are forced to reject Thornton's claim that the trial court could not revoke his probation for commission of a crime after he was acquitted of committing that same crime. Rather, as the *Jackson* court noted, the appropriateness of revocation in "each case must be decided on the basis of the evidence presented at the revocation hearing," because "[i]n many instances of acquittal the [S]tate may not be able to meet its preponderance burden." *Id.*

Here, the State presented sufficient evidence to meet its preponderance burden. A person commits resisting law enforcement as a Class D felony if he "flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop" and "uses a vehicle to commit the offense." Ind.Code § 35–44–3–3. Officer Bohall turned onto Sycamore with his lights and siren activated. At that time, he was seven or eight car lengths behind Thornton's truck, and no other cars were on the street with them. Officer Bohall drove seventy or seventy-five miles per hour and managed to get within four car lengths of Thornton's truck before Thornton disregarded a stop sign, ramped an intersection, and fled from Officer Bohall, whose car stalled when he ramped the same intersection. This evidence is sufficient to support the trial court's revocation of Thornton's probation.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.