JAMES H. EWING v. STATE OF INDIANA.

[No. 2-573A126.   Filed May 8, 1974.]

*Ronald S. Lieber,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellee.

SULLIVAN, P.J.—This appeal results from a trial court hearing at which the appellant's probation was revoked.

On April 18, 1972, the appellant (Ewing) was arrested for a violation of the Uniform Narcotic Drug Act, IC 1971, 35-24-1-1 *et seq.,* Ind. Ann. Stat. § 10-3519 *et seq.* (Burns Supp. 1973). Ewing entered a plea of guilty, and, on September 21, 1972, received a sentence of two to ten years imprisonment, and fine and costs of $300.00. The trial judge suspended the sentence[1] and placed Ewing on one year's probation under the following conditions:

## "CONDITIONS OF PROBATION

1. You shall not commit another criminal offense, either felony or misdemeanor.

---

[1]. The order of the court does not reflect the suspension of the fine and costs, but the court's failure to designate the fine and costs in the above condition form would indicate that they were also suspended.

2. You shall report weekly to the Court probation officer.

3. You shall notify the probation office of your new address within twenty-four hours if you change your address from that listed below.

4. You may not remove your residence from Marion County without first obtaining permission from the Court.

5. You must not associate with any person who is likely to influence you to commit any crime.

6. You may not use alcohol unless in a lawful manner and you may not use drugs unless prescribed by a physician.

7. You shall attend school or obtain and keep regular employment.

8. You shall permit the probation officer or any other law officer to enter your home and make reasonable inquiry into your activities while on probation.

9. You agree to waive extradition to the State of Indiana and agree to voluntarily return to this State and appear before the Court when so ordered by the Court.

10. You shall pay the sum of $——— per ——— for ——— until a total of $——— is paid in full as ordered by the Court.

11. You shall pay the sum of $——— per week for support of your family through the Clerk of this Court.

12. You shall pay the sum of $——— fine and costs within ——— days from this date.[1]

13. ————————————————————————————

During the period of probation, if it shall appear to the Court that the Defendant has violated any one of the conditions of his probation, or that he has committed another offense whether charged and determined or not, the Court may revoke the suspended sentence and impose an executed sentence.

Following the period of probation and within the maximum period of the original sentence not to exceed five (5) years, if it shall appear to the Court that the defendant has been convicted of committing another offense the Court may revoke the Suspended sentence and impose an executed sentence."

These conditions were acknowledged by Ewing and his attorney.

Additionally, the court required Ewing's consent to supplementary special conditions applicable only to drug offenders:

## "SPECIFIC RULES FOR DRUG RELATED OFFENSES ONLY

Sentence Suspended on recommendation of the State of Indiana and upon the request of the defendant. Defendant specifically waives any and all of his rights as to search and seizure, under the laws and constitutions of both the United States and the State of Indiana during his period of probation. Defendant further specifically agrees to appear at the offices of the Probation Department of this Court at any time, upon 24 hours notice, to submit to urinalysis.

Defendant is placed on probation for a period of one (1) year upon the following terms and conditions:

1. That he behave well.

2. That he submit to searches of his person and property by any police officer at any time.

3. That he report to the Probation Department of this Court at any time, upon 24 hours notice, to submit to urinalysis."

Approximately one month later, on October 31, 1972, Ewing was arrested for possession of a narcotic drug. There is no indication of record that Ewing's arrest was related to his probationary status. However, on the following day, Lt. Goden of the Indianapolis Police Department recognized Ewing as a probationer, and notified the probation department. Ewing then submitted to a urinalysis, which, according to a lab report dated November 3, disclosed the presence of morphine. The probation department filed a probation violation report with the trial court.

On November 10, 1972, a probation revocation hearing was conducted before the trial court. The prosecution presented two lab reports showing that a substance in the possession of Ewing at the time of his arrest was heroin, and that he had traces of morphine in his urine several hours after the arrest. It was also adduced at the hearing that Ewing had been arraigned on this subsequent charge but had not proceeded to trial.

After receiving all evidence, the judge stated:

". . . so in view [of] the evidence that I have heard today, more specifically on the results of the test on the urine, that is a clear violation of the terms of probation, and I am going to revoke for that reason, and the reason that he was apprehended and one of the conditions of probation was that he not commit another crime. We have heard evidence today that he was in possession of heroin so for both of those reasons, the suspended sentence heretofore entered is now revoked, . . . ."

The appellant presents the following issues for consideration:

1. Whether probation can be lawfully revoked on mere evidence that appellant committed a crime absent a conviction thereof.

2. Whether the trial court can impose special probation conditions, supplemental to the general probation conditions, upon persons convicted of drug and drug related offenses.

3. Whether the trial court can impose probation conditions which require an involuntary, future waiver of appellant's constitutional rights against unreasonable search and seizure and self-incrimination.

## I

## CONVICTION NECESSARY TO PROBATION REVOCATION BASED UPON CRIMINAL ACTS

Appellant contends that the trial court unlawfully revoked probation on mere evidence that appellant committed a crime, and that a conviction for the subsequent offense is a prerequisite to revocation. This contention would meritoriously preponderate, if in fact commission of a subsequent crime was the sole basis for revocation. However, appellant's probation was revoked on dual grounds. We therefore examine both.

Probation should initially be recognized as a statutory sentencing alternative committed to the court's discretion by the legislature. The empowering statute states, in pertinent part and subject to exceptions not here relevant, that a suspended sentence or probation should be granted:

". . . whenever such court, in the exercise of its judgment and discretion, shall find and determine that such person has committed the offense for which he or she has been convicted under such circumstances as that, in the judgment of such court, such person should not suffer the penalty imposed by the law for such offense if he or she shall thereafter behave well, or whenever such court shall find and determine that by reason of the character of such person, or the facts and circumstances of such case, the interest of society does not demand or require that such person shall suffer the penalty imposed by law if he or she shall thereafter behave well. . . ." IC 1971, 35-7-1-1, Ind. Ann. Stat. § 9-2209 (Burns Supp. 1973)

Therefore, the courts are at liberty to grant or deny probation subject to the procedures and guidelines promulgated by the legislature or inferred from statutory intendment. *State ex rel. Gash* v. *Morgan County Superior Court* (1972), 258 Ind. 485, 283 N.E.2d 349; *Farmer* v. *State* (1971), 257 Ind. 511, 275 N.E.2d 783.

A necessary concomitant of the power to grant probation is the power to revoke probation. Revocation unlike the initial grant of probation, is, however, subject to certain limiting circumstances. The legislature, in 1927, promulgated the seminal revocation provisions, and committed revocation power to the court's discretion as follows:

"At any time within the probation period, the probation officer may arrest the probationer without a warrant, or the court may issue a warrant for his arrest. Thereupon, the probationer shall forthwith be taken before the court for hearing. At any time within the maximum period for which the defendant might originally have been committed, but in no case to exceed five (5) years, the court may issue a warrant and cause the defendant to be arrested and brought before the court. If it shall appear that the defendant has violated the terms of his probation or *has committed another offense,* the court may revoke the probation or the suspension of sentence and may impose any sentence which might originally have been imposed." (Emphasis supplied) Ind. Ann. Stat. § 9-2211 (Burns 1956)

The above revocation statute was materially amended in 1967, and now provides, in similar pertinent part:

"At any time within the probation period, the probation officer may arrest the probationer only upon warrant issued by the sentencing court. Thereupon, the probationer may be represented by counsel of his choice. At any time within the maximum period for which the defendant might originally have been committed, but in no case to exceed five (5) years, the court may issue a warrant and cause the defendant to be arrested and brought before the court. If it shall appear that the defendant has violated the terms of his probation or *has been found guilty of having committed another offense,* the court may revoke the probation or the suspension of sentence and may impose any sentence which might originally have been imposed." (Emphasis supplied) IC 1971, 35-7-2-2, Ind. Ann. Stat. § 9-2211 (Burns Supp. 1973)

It is apparent that the legislature by its 1967 amendment intended to require a criminal conviction prior to revocation of a suspended sentence or probation predicated upon commission of another offense. *State ex rel. Gash* v. *Morgan County Superior Court, supra.*

In the *Gash* case, our Supreme Court reviewed the revocation of a defendant's suspended sentence, and stated that the statutorily imposed general condition of " 'good behavior' means lawful conduct, i.e., abstaining from criminal acts. . . ." *Id.* 283 N.E.2d 354. The court thus held:

"If the revocation is for breach of the general condition of good behavior, there must have been a determination of guilt between the date of suspension and the date of the revocation hearing." 283 N.E.2d at 355.

The clear import of the revocation statute and the *Gash* decision leads inevitably to the conclusion that revocation of a suspended sentence *or* probation solely by reason of unlawful conduct, i.e., commission of another crime, must be preceded by a criminal conviction.[2]

---

2. The requirement of a prior conviction for criminal activity or violation of good behavior conditions comports with the views of numerous commentators. The American Bar Association has provided the following guidelines:

"Proceedings following commission of another crime. A revocation proceeding based solely upon commission of another crime ordinarily should not be initiated prior to the disposition of that charge. How-

In addition to the statutory condition of "good behavior", the trial court may impose upon a probationer "conditions as it may deem best", and may thereafter revoke probation for violation of such additional conditions. IC 1971, 35-7-2-1, Ind. Ann. Stat. § 9-2210 (Burns 1956).[3] However, if the additional condition violated is one requiring refrainment from criminal activity, then a criminal conviction for such activity is required prior to probation revocation. *See, e.g., Smith* v. *State* (1974), 261 Ind. 510, 307 N.E.2d 281 (probation revoked for subsequent criminal conviction).

In the instant case, it is apparent that the court revoked Ewing's probation on two grounds: first, the alleged commission of another crime; and, second, the presence of a narcotic substance in Ewing's urine. To the extent that the trial court based appellant's probation revocation on the commission of another crime, it was in error. However, the action of a trial court will be affirmed if it can be sustained on any theory. *Cain* v. *State* (1973), 261 Ind. 41, 300 N.E.2d 89. We must therefore review the other basis for revocation to determine if there exists justification for the trial court's action.

ever, upon a showing of probable cause that another crime has been committed by the probationer, the probation court should have discretionary authority to detain the probationer without bail pending a determination of the new criminal charge." ABA Standards, Probation § 5.3 (Approved Draft, 1970)
*See also,* Model Penal Code § 301.3 (P.O.D. 1962)
3. The statute permitting the trial court to impose conditions in addition to the "good behavior" condition states:
"Conditions of probation—Revocation and modification—The court placing a defendant on *probation* shall impose such conditions as it may deem best. The court may subsequently revoke or modify any condition of probation or may change the period of probation. While on probation the defendant may be required to pay in one or several sums, a fine or costs imposed at the time of being placed on probation, or may be required to make restitution or reparation to the aggrieved party or parties for actual damages or loss caused by the offense for which conviction was had, or may be required to provide for the support of any person or persons for whose support he is legally responsible." (Emphasis supplied) IC 1971, 35-7-2-1, Ind. Ann. Stat. § 9-2210 (Burns 1956)
It thus appears that the imposition of additional conditions is the single distinguishing factor between probation and a suspended sentence. *State ex rel. Gash* v. *Morgan County Superior Court, supra,* 283 N.E.2d at 356 (DeBruler, J., concurring).

## II

### (A) TRIAL COURT MAY IMPOSE SPECIAL PROBATION CONDITIONS FOR DRUG RELATED OFFENSES

The appellant contends that it is impermissible for the trial court to impose special probation conditions on persons convicted of drug and drug related offenses which are in addition to or different from the conditions imposed upon other offenders. This contention is pallid in substance.

It is fundamental that probation should be granted only where the best interests of society and the individual are served. See IC 1971, 35-7-1-1, Ind. Ann. Stat. § 9-2209 (Burns Supp. 1973). In the exercise of its discretion, the trial court is required to balance the individual's rehabilitation needs with society's paramount interest in protection from future criminal behavior. *See, e.g., Gagnon* v. *Scarpelli* (1973), 411 U.S. 778, 93 S.Ct. 1756; *Roberts* v. *United States* (1943), 320 U.S. 264, 64 S.Ct. 113; *Burns* v. *United States* (1932), 287 U.S. 216, 53 S.Ct. 154; *Porth* v. *Templar* (10th Cir. 1971), 453 F.2d 330; *see also* Comment, *The Parole System,* 120 U. Pa. L. Rev. 282 at 307 *et seq.* (1971); Note, *Judicial Review of Probation Conditions,* 67 Colum. L. Rev. 181 (1967). This tight-rope walk constitutes the essence of the trial court's determination of fitness for probation.

A necessitous corollary to a grant of probation is the imposition of probation conditions. These conditions should effectuate the supervision required to achieve probation goals, and, therefore, must be functionally and rationally related to the probationer's rehabilitative needs and to society's prophylactic interests.

The court in *Porth* v. *Templar, supra,* stated:

"The sentencing judge has a broad power to impose conditions designed to serve the accused and the community. The only limitation is that the conditions have a reasonable relationship to the treatment of the accused and the protection of the public. The object, of course, is to produce a law abiding citizen and at the same time to protect the

public against continued criminal or antisocial behavior." 453 F.2d at 333.

The appellant impliedly argues that imposition of special conditions on a narcotic offender violates his right to equal protection of law. Simply stated, the appellant would have us engage in jurisprudential duplicity. The manifest goals of probation and the need for individualistic treatment seem to sanction, if not compel, the imposition of special probation conditions on defendants convicted of certain types of crimes. In the instant case, the need for differential treatment is patent. Narcotic abuse is a pervasive and damaging force in our society, and presents a unique legal problem due to its psychological and physiological ramifications. It would therefore follow that narcotic related crimes are deserving, indeed demanding, of special and particularistic judicial treatment—including the imposition of distinctive and meaningful probation conditions so long as they are reasonable, having due regard to the nature of the offense, the rehabilitative needs of the offender and the surrounding circumstances. The appellant's contention in this regard therefore must fail.

## (B) RESULTS OF URINALYSIS CONSTITUTES REAL OR PHYSICAL EVIDENCE, AND UNDER CIRCUMSTANCES HERE WAS ADMISSIBLE IN REVOCATION HEARING

The appellant asserts the unconstitutionality of the special probation conditions. More specifically, the appellant contends that these conditions require an involuntary, future waiver of his constitutional rights against unreasonable search and seizure and self-incrimination.

An analysis of the facts, however, reveals that appellant's attack upon the validity of the narcotic related probation conditions, even if meritorious, does not render revocation of his probation erroneous.[4] Neither the appellant nor the record

---

4. By virtue of the determination we have made in this portion of our decision, we need not consider the specific drug related probation conditions as to "reasonableness", or constitutionality.

discloses that the narcotic conditions, although perhaps facially questionable, have prejudiced the appellant.

In the instant case, the appellant was arrested on October 31, 1972, for possession of heroin, and was duly incarcerated. The record is devoid of facts suggesting that appellant's arrest was predicated on his probationary status. The following morning, a urine sample was obtained from him. This urine sample contained a residue of morphine, and the lab report of the sample was introduced into evidence at the revocation hearing. Such facts indicate that the propriety of the urinalysis test does not depend upon the special probation conditions but may be founded upon Ewing's arrest for an independent drug offense.

The question thus presented is whether the results of a urinalysis, conducted while in lawful custody, are admissible in a probation revocation hearing.

A urinalysis can be readily categorized as a test for "real or physical" evidence, and is not dissimilar to a blood test, or breathalizer test. *Davis* v. *District of Columbia* (1968 D.C. Ct. App.), 247 A.2d 417. See 22 A C.J.S. *Criminal Law* § 645 (3).

The law permits the utilization of such physical evidence over objections that the results violate the Fifth Amendment privilege against self-incrimination. *Schmerber* v. *California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908; *Heichelbech* v. *State* (1972), 258 Ind. 334, 281 N.E.2d 102; *Rowe* v. *State* (1973), 157 Ind. App. 283, 299 N.E.2d 852.

In *Hollars* v. *State* (1972), 259 Ind. 229, 286 N.E.2d 166, our Supreme Court definitively stated:

"The 5th Amendment privilege against self incrimination has been held to reach only compulsion of the accused's communications and responses which are also communications, that is evidence in the form of testimony or that which is testimonial in character. It does not shield against compulsory submission to tests that are merely physical or produce evidence that is only physical in nature, such as

fingerprints, measurements, voice or handwriting exemplars, or physical characteristics or abilities." (Citations omitted) 286 N.E.2d at 168.

Similarly, a suspect's submission to tests for physical evidence have not been viewed as an unreasonable search and seizure if the officer reasonably believes that the evidence will be destroyed or dissipated, and if the test or examination is reasonable in scope and method. *Schmerber* v. *California, supra; see Adams* v. *State* (1973), 260 Ind. 663, 299 N.E.2d 834. In the case before us, it is apparent the reasonableness standard elucidated in *Schmerber* has been met. It is a physiological fact that narcotic drugs, like alcohol, will diminish or disappear as the human body eliminates it from the system. Furthermore, the urinalysis process, sofar as the record shows, was free of coercion, and consisted of a rather routine bodily function.

There can be little doubt that if real or physical evidence obtained under such circumstances is admissible in a criminal trial, that it is admissible in a probation revocation hearing.

Turning to the instant case, we note that Condition 6 of the general probation conditions states:

"6. You may not use alcohol unless in a lawful manner and you may not use drugs unless prescribed by a physician."[5]

Therefore, under the facts of this case the trial court did not abuse its discretion in revoking appellant's probation for violation of that general probation condition.

The action of the trial court stands affirmed.

Buchanan and White, JJ., concur.

NOTE.—Reported at 310 N.E.2d 571.

---

5. There was no hint of record that the drug present in Ewing's urine had been prescribed by a physician.