RICHARD COLVIN *v.* STATE OF INDIANA.

[No. 475S92. Filed May 20, 1976. Rehearing denied August 19, 1976.]

*James E. Burke,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *Arthur Thaddeus Perry,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Richard Colvin, was convicted on December 5, 1974, of armed robbery. A sentence of thirty years was fixed by the jury. The Appellant filed his Motion to Correct Errors on January 14, 1975. It is from the denial of this motion on January 20, 1975, that the Appellant now presents this appeal.

The evidence at trial revealed that at approximately 12:30 a.m., August 2, 1974, two men entered the Kroger food store at 4526 Western Avenue in South Bend, Indiana. One of the men wore a black shirt, black trousers and a nylon stocking on his head pulled down to, but not covering, his eyes. He was armed with a rifle. The other man wore a red checkered or plaid shirt.

The man in the checkered shirt instructed the store employees to lie on the floor. One store employee, David Webb, was told to get up and get the money from the cash register. He put currency and change from one cash register into a paper sack and then put currency, change and food stamps from a second register into the same sack. The men took Webb outside the store, demanded his wallet, and took the money in it. Webb was told to lie down. The men then fled on foot.

South Bend Police Sergeants Hurley and Ruszowski drove toward the scene of the crime upon receiving a dispatch to the effect that an armed robbery was in progress. Subsequent dispatches informed the officers that one robber was armed with a rifle and that police arriving at the store had learned that the suspects had fled south on foot. As the officers continued driving they saw two men running south.

The officers left their car and ordered the men to stop. One of the suspects wore a plaid shirt and dropped a paper bag to the ground as he came to a halt. This bag was found to contain currency, change, food stamps, and a Kroger cash register receipt. The other suspect wore a black shirt and carried a rifle which was dropped after an apparent unsuccessful attempt to bolt the action. Both men wore nylons over their heads.

The men were taken to the scene of the crime where Kroger employees identified them as the robbers. The suspect wearing the black shirt and carrying the rifle was identified as the Appellant. Other suspects brought to the store were released when the employees informed police they were not involved.

## I.

The Appellant's first contention is that the trial court erred in overruling defense objections to the admission into evidence of an oral statement by the Appellant. It is maintained that there was no showing of a knowing and voluntary waiver of rights by the Appellant prior to the statement. The evidence admitted over objection reads as follows:

"Q What did he say?
A He was asked afterward if there was a car involved. He stated something about a black and red vehicle and then he was cut off by the other suspect that was with him.

Q What do you mean cut off?
A He was told not to say anything.

Q The other fellow told Mr. Colvin?
A Yes he did.

Q And after he told Mr. Colvin that did Mr. Colvin have anything more to say?

A No he didn't say anything after that."

It should be noted that no hearing out of the presence of the jury was held to determine the admissibility of this statement. Such a hearing pursuant to Ind. Code § 35-5-5-1 (Burns 1975) would have established a clear record upon which our determination of this issue could easily be based. As it stands, we must sift through the record to determine whether the Appellant's rights were knowingly and voluntarily waived.

The testimony of police Sergeant Charles Hurley indicates the Appellant was indeed informed of his rights:

"A . . . Sergeant Ruszowski, as I kept both suspects under guard, advised them of their rights . . . and they were taken over to the squad car. . . .

\* \* \*

A We placed them in the back seat of our squad car.

Q Were they still handcuffed when they were in the car?

A Yes.

Q And were they read the Miranda rights?

A Yes once again in the vehicle they were read their Miranda rights.

\* \* \*

Q Did Mr. Colvin answer that he understood it or did not understand?

A I do not recall him replying affirmatively. However, I do recall him starting to make a statement.

Q Starting to make a statement rather than say yes or no?

A Yes."

The testimony of Sergeant Ruszowski, however, goes even further. It indicates that the Appellant did, in fact, acknowledge an understanding of the rights which had been read to him.

"A . . . on the other side I read: Do you understand each of these rights I have explained to you? And: Having these rights in mind do you wish to talk to us now?

Q  Now when you asked the first of the two questoins: Do
you understand each of these rights I have explained
to you to Mr. Colvin, what did he say to you?
A  Very quietly he said yes."

This testimony reveals that the Appellant was properly advised of his rights and that he understood them. No other allegations of the Appellant's knowledge or voluntariness are presented. It would thus appear that the Appellant's admission was properly admitted into evidence. In determining the presence of reversible error here, however, it is perhaps simpler to look at the statement itself and any prejudice which might attach to its admission.

The statement admitted into evidence, in light of the other evidence at trial, is so unimportant and insignificant that any error here must be regarded as harmless. *Chapman* v. *California,* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. The Appellant was apprehended while running from the vicinity of the crime, wearing a nylon stocking over his head and carrying a rifle. His partner carried a bag of money and food stamps matching the description of the items stolen. These particulars and the clothing worn by the Appellant matched the accounts of the crime given by its victims. The Appellant was identified by those same witnesses as one of the robbers. Both suspects were caught virtually "with their hands in the cookie jar" and we are left with no reasonable doubt that the jury would have reached the same verdict without hearing the oral statement of the Appellant.

## II.

Also admitted into evidence at trial were State's Exhibits Nos. 9 and 9-A, a paper sack and money contained in the sack. It is contended that these exhibits were irrelevant and immaterial since no connection was shown between them and the alleged crime and that their admission into evidence thus constitutes reversible error. We find no merit in this argument.

"It has long been settled law in this jurisdiction that any evidence tending to prove a material fact is admissible, even though its tendency in that direction may be exceedingly slight. *Smith* v. *State*, (1937) 212 Ind. 605, 10 N.E.2d 899. It is equally well settled that positive proof of authentication of a fact or thing is not necessary for admission of that fact or thing into evidence but circumstantial evidence is relevant. *Dixon* v. *State*, (1963) 243 Ind. 654, 189 N.E.2d 715. This court, in *Pullins* v. *State*, (1970) 253 Ind. 644, 256 N.E.2d 553, held that 'any fact which tends to connect appellant with commission of a crime is admissible'." *Elliott* v. *State*, (1972) 258 Ind. 92 at 96, 279 N.E.2d 207 at 209.

The connection between these exhibits and the Appellant is obvious. Witnesses of the crime testified that the robbers instructed one of the store employees to put the contents of the cash registers into a paper bag. This was done and the men were seen leaving with the sack. The Appellant and his confederate, identified by witnesses as the robbers, were arrested with a paper sack containing money, food stamps, and a Kroger receipt in their possession. This sufficiently established the relevance and materiality of the exhibits.

## III.

The Appellant next urges that the trial court erred in overruling a defense motion for a mistrial based upon a statement by the prosecutor of his personal opinion of the Appellant's guilt in the State's closing argument. The prosecutor said, "I think Mr. Colvin is guilty and not unjustly accused." A reading of the argument as a whole reveals that this statement was made in the context of asking the jury to "look hard" at the evidence and apply the reasonable doubt standard. The jury was instructed by the trial court that this standard is intended "to guard, as far as human agencies can, against the conviction of those who are innocent and unjustly accused of crime." The prosecutor's statement responded to this instruction.

We do not believe that the prosecutor's statement here implied personal knowledge de hors the record of the Appellant's

guilt. Rather, the opinion was placed in the context of the evidence presented to the jury and the standard to be applied by the jury in reaching its verdict. We can thus find no reversible error here. *Swope* v. *State,* (1975) 263 Ind. 148, 325 N.E.2d 193.

## IV.

The Appellant's final contention is that the trial court erred in failing to provide a separate trial on the question of sentencing. It is argued that the fixing of the Appellant's sentence by the jury denied the Appellant the benefit of a presentence investigation and thus denied him the equal protection of the laws.

Ind. Code § 35-8-1A-9 (Burns 1975) provides that no defendant shall be sentenced before a written presentence report is considered by the sentencing court. No presentence report is considered prior to sentencing, however, when the sentence is fixed by a jury. This classification of defendants as those sentenced by a judge and those sentenced by a jury was recently challenged before this court. In upholding the constitutionality of this classification we wrote:

> "All this is to say that a defendant has no inherent right to have a presentence report considered prior to his sentencing. This is a privilege which the Legislature has granted defendants tried before a judge and which it has necessarily denied those defendants tried before a jury. This classification of defendants has been made against a background of differences of procedure which must necessarily exist between jury and bench trials. It has resulted from due process considerations of jury trials which do not permit the practical use of presentence reports. We believe these factors provide a rational basis sufficient to support the constitutionality of the classifications challenged by the Appellant and we can find no error." *Pulliam* v. *State,* (1976) 264 Ind. 381, 345 N.E.2d 229 at 242-243.

We similarly find no error in this case. The judgment of the trial court is affirmed.

All justices concur.

NOTE.—Reported at 346 N.E.2d 737.