Clayton L. JEFFERSON,
Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 3–679A180.

Court of Appeals of Indiana,
Third District.

Jan. 30, 1980.

James R. Bielefeld, Crown Point, for defendant-appellant.

Theo. L. Sendak, Atty. Gen., Joel Schiff, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Presiding Judge.

On the morning of January 5, 1975, Stephen Armstrong, Roland Anderson, Eddie Leon Hill, and appellant Clayton Jefferson decided to rob a grocery. After "casing" Lindy's Food Store in Hammond, Indiana, the four returned in the afternoon with Armstrong at the wheel. Their car was parked in an adjacent alley, and Armstrong waited as his three compatriots left the automobile and entered the store. During the course of the robbery, a customer, Thomas Pearson, was shot in the chest with a shotgun blast by one of the perpetrators, and his wallet was taken. Before appellant and his two friends could return to the getaway vehicle, the police arrived. Armstrong left by himself in the auto, and the other three fled on foot. All four were subsequently captured. Hill and appellant gave written statements at the Hammond Police Station admitting their participation in the holdup. Both individuals signed a waiver of rights form.

Armstrong, Hill, and appellant were jointly charged with the crimes of robbery and inflicting injury in the perpetration of a robbery or attempted robbery. The three of them were tried together by a jury. Anderson was to be tried separately. Pursuant to a plea bargain between the State and Armstrong's counsel reached in the early stages of the trial, the State agreed to amend the robbery charge against Armstrong to that of automobile banditry. In exchange for a guilty plea to that crime, the State additionally agreed to enter a *nolle prosequi* at the time of sentencing for the second charge of inflicting injury in the perpetration of a robbery or attempted robbery. The trial continued with the jury finding appellant guilty of robbery and Hill guilty of inflicting injury in the perpetration of a robbery or attempted robbery. The court then rendered judgments pursuant to the verdicts. Armstrong was sentenced to one to five years in the state prison. Hill was sentenced to life imprisonment, and appellant received an indetermi-

nate prison term of ten to twenty-five years. Appellant filed a belated motion to correct errors and subsequently perfected an appeal to this court.

Appellant's first allegation of error concerns the introduction into evidence, over his objection, of a written statement or confession made by him to Officers John Baron and Mike Solan of the Hammond Police Station, Detective Bureau. He contends that there was no valid waiver of his right to counsel as guaranteed by the Sixth Amendment nor of his privilege against self incrimination as embodied in the Fifth Amendment.

The transcript of testimony discloses that appellant was taken to the Hammond Police Station after his apprehension and was brought to the Detective Bureau where Officers Baron and Solan were present. Appellant was given a written copy of his constitutional rights which Officer Baron then read as appellant followed. The waiver portion of the form was also read to him, and he was orally advised that no promises were being made in exchange for his confession. Appellant did not ask any questions nor did he indicate that he wanted to stop at any time. Appellant then signed the waiver and, without an attorney present, gave an oral statement detailing the events surrounding the robbery of Lindy's Food Store and his part in it. Officer Solan reduced the oral statement to typewritten form. Thereafter, appellant was instructed to read the statement as it appeared on paper and to make any changes or corrections he desired. After reading his confession, appellant signed his name to it. The entire procedure from the reading of rights to the signing of the confession took approximately an hour and a half. On voir dire examination of appellant, he admitted that no threats had been made against him in connection with the statement. The trial court later ruled that the confession was made voluntarily and that it could be admitted into evidence.

■ Our courts have held that in order for a confession to be admissible, it must appear from the totality of circumstances that it was made voluntarily and not as a result of promises, threats, violence, compulsion, or other improper inducements or influences. *See, e. g., Johnson v. State* (1979), Ind., 387 N.E.2d 1328; *Middleton v. State* (1979), Ind.App., 391 N.E.2d 657; IC 35–5–5–1 to 2 (1976). This same test is utilized in order to determine whether there has been a valid waiver of the *Miranda* rights prior to giving the incriminating statement. *Tyson v. State* (1979), Ind., 386 N.E.2d 1185; *Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188. A trial court's ruling on the admissibility of a confession will not be disturbed when it is based on substantial, though conflicting, probative evidence that the statements were voluntarily given. *Porter v. State* (1979), Ind., 391 N.E.2d 801; *Riggs v. State* (1976), 264 Ind. 263, 342 N.E.2d 838.

■ In the case at bar, appellant's sole contention is that there was no valid waiver of his constitutional rights because those rights were inadequately explained to him. Specifically, he attacks the language of the waiver form which indicates the specific rights which were communicated orally to him by Officer Baron. The form stipulates,

"1. Before making this statement, I was advised that I have the right to remain silent and that anything I might say may or will be used against me in a court of law.

2. That I have the right to consult with an attorney of my own choice before saying anything, and that an attorney may be present while I am making any statement or throughout the course of any conversation with any police officer if I so choose.

3. That I can stop and request an attorney at any time during the course of the taking of any statement or during the course of any such conversation.

4. That in the course of any conversation I can refuse to answer any further questions and remain silent, thereby terminating the conversation.

5. That if I cannot hire an attorney, one will be provided for me."

The essence of appellant's argument is that since he was not informed of his right to appointed counsel until item number five, it was not made clear to him that counsel could be *appointed prior* to any questioning. He notes that at item number two when he was told that he had a right to an attorney before and during questioning the phrase "attorney of my own choice" was used and that such phrase, at least to the legal mind, is indicative of retained counsel. Citing *Williams v. State* (1976), 264 Ind. 664, 348 N.E.2d 623 he urges that the advice was therefore misleading and inadequate because it led to the belief that appointed counsel could not be had prior to or during interrogation.

We disagree, but in doing so we acknowledge that the spirit of *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 would be better served by utilizing a form of advice that directly and immediately explained the right to counsel as an indigent before and during interrogation.

We find Jefferson's reliance on *Williams* is misplaced.[1] *Williams* was primarily concerned with an appellant's fourth amendment rights following an illegal arrest and detention and the application of *Brown v. Illinois* (1975), 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416. While in the context of that inquiry two of the justices found the warnings inadequate in view of a police officer's testimony that he, in fact, had no means for providing Williams with indigent counsel, 348 N.E.2d 629, no majority reached that issue.[2] Three months earlier the court had considered an identical advice form in *Sotelo v. State* (1976), 264 Ind. 298, 342 N.E.2d 844 and a majority found it sufficient because "A common sense reading does not lead to the Appellant's conclusions of ambiguity." 342 N.E.2d 847. *See also Gutierrez v. State* (1979), Ind. 388 N.E.2d 520, 525, where the court unanimously held this advice form adequate under the facts there present.

Thus, in the case before us and in the absence of any circumstances indicating that Jefferson was indeed misled, we conclude the confession was properly admitted.

■ The next allegation of error relates to the admission of co-defendant Eddie Leon Hill's confession which implicated appellant. Appellant cites the U. S. Supreme Court decision of *Bruton v. United States* (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 where the court held that at a joint trial, the introduction into evidence of a non-testifying defendant's confession which is inculpatory of a co-defendant violates the latter's Sixth Amendment right to confront witnesses against him. In *Bruton*, the jury was instructed that the confession was to be disregarded in determining the implicated defendant's guilt or innocence. Although this practice had been approved by prior Supreme Court precedent as curing any potential prejudicial effect that the statement might have on a joint defendant, the court in *Bruton* overruled that holding and concluded,

"Here the introduction of Evans confession posed a substantial threat to petitioner's right to confront the witnesses against him, and this is a hazard we cannot ignore. Despite the concededly clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination. The effect is the same as if there had been no instruction at all."

*Id.* at 137, 88 S.Ct. at 1628. The use of the confession was thus held to be reversible error. The Indiana courts have expressed agreement with the rule of law announced in *Bruton*. *Sims v. State* (1977), 265 Ind. 647, 358 N.E.2d 746; *Monserrate v. State* (1971), 256 Ind. 623, 271 N.E.2d 420; *Baniszewski v. State* (1970), 256 Ind. 1, 261 N.E.2d 359.

---

1. Although the text of the warnings given in *Williams* does not appear in the opinion, from the record we have verified counsel's assertion that they are identical to those before us.

2. With two justices dissenting to the reversal, Justice Hunter concurred specially.

However, it has also been held that the improper admission of a defendant's confession which implicates a jointly tried co-defendant will be considered harmless error beyond a reasonable doubt where the co-defendant's own confession has been lawfully introduced and where it does not materially differ from that of his confederate. *Stone v. State* (1978), Ind., 377 N.E.2d 1372; *Burnett v. State* (1978), Ind., 377 N.E.2d 1340. This conclusion is further strengthened when there exists corroborating testimony and evidence of an appellant's guilt in addition to the similar confessions. *Gutierrez v. State* (1979), Ind., 388 N.E.2d 520; *Richardson v. State* (1978), Ind., 373 N.E.2d 874; *Carter v. State* (1977), 266 Ind. 140, 361 N.E.2d 145, *cert. denied* (1977), 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142.

In the case at bar, a comparison between appellant's confession and that of co-defendant Hill reveals that they are substantially the same. Hill does not charge appellant with engaging in any conduct which appellant himself does not admit. In fact, before admitting both statements, the trial court specifically found nothing in either one that would tend to incriminate each defendant any more than would his own confession. Furthermore, while appellant confessed that he stole Thomas Pearson's wallet during the robbery, which theft formed the basis for his conviction, there is no reference to such theft in Hill's statement. In addition, five witnesses who were inside the store at the time of the incident made in-court identifications of appellant as being one of the participants in the hold-up. Another witness, Patrolman David Mileusnic of the Hammond Police Department, testified that after appellant was apprehended and later searched in the booking area of the police station, Mr. Pearson's billfold was found in appellant's left stocking. In light of appellant's own complete confession and the above testimony from witnesses indicating his guilt of the admitted crime, we are convinced that introducing co-defendant Hill's confession into evidence was harmless error beyond a reasonable doubt.[3]

Another issue raised by appellant is an alleged due process violation which he claims occurred when the trial court failed to review a presentence investigation report prior to his actual sentencing. Appellant's reading of the transcript is erroneous. The record specifically reveals that the trial court received and considered a presentence investigation report from the local probation department before sentencing appellant. After asking appellant and his counsel whether there was any reason why it

---

3. If appellant was concerned that his co-defendant's confession would be admitted and would prejudice his defense by virtue of the incriminating statements therein, the proper procedure to have followed would have been to file a motion for a separate trial pursuant to IC 35–3.1–1–11(b) (1976). This statutory section provided at the time of trial,

"(b) Whenever two (2) or more defendants have been joined for trial in the same indictment or information and one (1) or more defendants move for a separate trial because another defendant has made an out-of-court statement which makes reference to the moving defendant but is not admissible as evidence against him, the court shall require the prosecutor to elect one of the following courses:

(1) A joint trial at which the statement is not admitted into evidence;

(2) A joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted; or

(3) Granting the moving defendant a separate trial. In all other cases, upon motion of the defendant or the prosecutor, the court shall order a separate trial of defendants whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant."

This act was amended by Pub.L.No.2, § 3530, 1978 Ind. Acts 616–17 in which only minor language changes were made. Thus, by making a motion for a separate trial, appellant could have required the court to compel the prosecutor to elect one of the three above options. Although co-defendant Armstrong did make such a motion, appellant neither joined in it nor did he make one himself. The correct time to make this motion is before the trial commences unless the defendant is unaware of the existence or incriminating content of his co-defendant's confession, in which case the motion can be made during trial. *Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188; IC 35–3.-1–1–12(a) (Supp.1979).

should not then proceed, the trial court received a negative response and accordingly passed sentence. Thus, there is no error in this regard.

■ Next, appellant contends that the Indiana robbery statute in effect at the time of his conviction and sentencing was unconstitutional in that it deprived him of due process of law. A violation of the Eighth Amendment's prohibition against cruel and unusual punishment is also alleged. The statute in question provided,

> "Whoever takes from the person of another any article of value by violence or by putting in fear, is guilty of robbery, and on conviction shall be imprisoned not less than ten (10) years nor more than twenty-five (25) years, and be disfranchised and rendered incapable of holding any office of trust or profit for any determinate period."

IC 35–13–4–6 (1976) (repealed by Pub.L.No. 148, § 24, 1976 Ind. Acts 816). The effective date of the repeal, July 1, 1977, was delayed to October 1, 1977 by virtue of Pub.L.No.340, § 151, 1977 Ind. Acts 1611.[4] The basis for Jefferson's attack is that the law made provision for a mandatory sentence of ten to twenty-five years of imprisonment, allegedly without any opportunity for the appellant's personal history and background to be taken into account for possible mitigation of punishment. Appellant supports his argument with an intended citation to *Ellison v. State* (1977), 266 Ind. 114, 360 N.E.2d 1256 (instead of the mistaken citation to *Serrano v. State* (1977), 266 Ind. 126, 360 N.E.2d 1257) for the proposition that at this time, presentence reports were even considered irrelevant and meaningless in jury trials.

Appellant's understanding of the law as it existed at the time of his own court proceeding is incorrect. A good starting point would be the following quote explaining the state of the law during this period,

> "Under the prior law, juries and judges were both involved in the sentencing process and it was somewhat difficult to ascertain the respective role of each. As a general rule, juries decided the sentences for misdemeanors [*Crooks v. State* (1971), 256 Ind. 72, 267 N.W.2d 52; *Shewmaker v. State* (1956), 236 Ind. 49, 138 N.E.2d 290] and for murder and treason [*see Beasley v. State* (1977), 267 Ind. 396, 370 N.E.2d 360; *Weyls v. State* (1977), 266 Ind. 301, 362 N.E.2d 481; *Brown v. State* (1969), 252 Ind. 161, 247 N.E.2d 76] and judges imposed sentences with reference to other offenses. Despite this general rule, however, juries were also authorized to determine an appropriate fine in all cases [*Hollars v. State* (1972), 259 Ind. 229, 286 N.E.2d 166] and the judge's role was generally limited to imposing the legislatively prescribed indeterminate sentence of imprisonment or granting probation in appropriate cases."

Kerr, *Foreword: Indiana's Bicentennial Criminal Code, 1976 Survey of Recent Developments in Indiana Law*, 10 *Ind.L.Rev.* 1, 27–28 (1976) (footnotes omitted). In addition, the jury was required to fix the penalty when the statutory punishment called for a determinate sentence. *Haskett v. State* (1979), Ind., 395 N.E.2d 229; *Henry v. State* (1978), Ind., 379 N.E.2d 132, except as otherwise provided by the legislature. *Houtchens v. Lane* (1965), 246 Ind. 540, 206 N.E.2d 131; IC 35–13–5–1 (1976) (repealed 1976). The basis for all this case law relating to jury and judge sentencing was the

---

4. The robbery statute appears in its current form as follows,

> "A person who knowingly or intentionally takes property from another person or from the presence of another person:
> (1) By using or threatening the use of force on any person; or
> (2) By putting any person in fear;
> commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weap-

on, and a Class A felony if it results in either bodily injury or serious bodily injury to any other person."

IC 35–42–5–1 (Supp.1979). The punishment for committing each of these three felonies is a determinate period of imprisonment with an opportunity for the trial court to increase or decrease the penalty depending on the existence of aggravating or mitigating circumstances. IC 35–50–2–4 to –6 (Supp.1979).

Indeterminate Sentence Law, IC 35–8–2–1 to –3 (1976) (repealed 1976).[5] Since appellant was convicted of a crime which was neither a misdemeanor, nor murder or treason, nor one which carried a determine sentence, the trial court properly assessed the punishment after the jury returned a verdict of guilty.

Furthermore, at the time of appellant's conviction, the following requirement was imposed on the trial court,

"Requirement of presentence report. No defendant convicted of a felony shall be sentenced before a written presentence report is prepared by a probation officer and considered by the sentencing court. Delay of sentence to await a presentence report does not constitute an indefinite postponement or suspension of sentence."

IC 35–4.1–4–9 (1976). The scope of this report was to include the convicted individual's "history of delinquency or criminality, social history, employment history, family situation, economic status, education and personal habits," as well as any other relevant information. IC 35–4.1–4–10 (Supp. 1979). Because appellant's crime was classified as a felony under prevailing law, IC 35–1–1–1 (1976) (repealed 1976), this statutory requirement applied. It should also be noted that case law had construed IC 35–4.1–4–9 as applicable only to trials where the judge passed sentence so that a sentencing jury was not entitled to review the presentence report. *Feggins v. State* (1977), 265 Ind. 674, 359 N.E.2d 517; *Colvin v. State* (1976), 264 Ind. 514, 346 N.E.2d 737, *cert. denied* (1977), 429 U.S. 1049, 97 S.Ct. 760, 50 L.Ed.2d 765; *Pulliam v. State* (1976), 264

5. These sections provided,

"Sec. 1. When the defendant is found guilty the jury, except in the cases provided for, in the next two sections, must state, in the verdict, the amount of fine and the punishment to be inflicted; when the plea is guilty, or the trial is by the court, the court, subject to the same exception, shall assess the amount of fine and fix the punishment to be inflicted.

Sec. 2. In all cases of felony tried hereafter, before any court or jury in this state, if the court or jury find the person on trial guilty of a felony, it shall be the duty of such court or jury to further find and state whether or not the defendant is over sixteen (16) years of age and less than thirty (30) years of age. If such defendant be found to be between said ages and be not guilty of treason or murder in the first or second degree, it shall only be stated in the finding of the court or the verdict of the jury that the defendant is guilty of the crime charged, naming it, and that his age is that found to be his true age, and the court trying such person, if such person has passed the full age of twenty-one (21) but has not passed the full age of thirty (30) years, and has not been theretofore convicted of a felony, the court shall sentence such person to the custody of the board of trustees of the Indiana Reformatory, to be confined at the Indiana Reformatory, as guilty of the crime in such finding or verdict, and that he be confined therein for a term not less than the minimum time prescribed by the statutes of this state as a punishment for such offense, and not more than the maximum time prescribed by the statutes therefor, subject to the rules and regulations established by such board of trustees, and it shall be the duty of the board of trustees of said reformatory, to receive all such convicted persons, and all exist-

ing laws requiring the courts of this state to sentence such persons to the penitentiaries or prisons of this state, are hereby modified and changed as to make it the duty of such courts to sentence such prisoners to the Indiana Reformatory. The board of trustees may terminate such imprisonment when the rules and requirements of such reformatory have been lived up to and fulfilled, according to the provisions of this act: Provided, That if such person be between the ages of twenty-one (21) and thirty (30) years and shall have been therefore convicted of a felony, the court in its discretion may sentence such person to the Indiana State Prison.

Sec. 3. Whenever any male person thirty (30) years of age or over, shall be on trial for any felony, except treason or murder, the court or jury trying the cause shall ascertain only his age and whether he is guilty of the offense charged; and if more than one (1) offense be charged, it shall be found on which, if any, of such offenses he is guilty, and of which he is not guilty. Instead of pronouncing against such defendant a definite term of imprisonment, the court, after such finding or verdict of guilty, shall pronounce against him a sentence of imprisonment in the State Prison for an indeterminate period, stating in such sentence the maximum and minimum limits thereof, as such maximum and minimum limits of time for the punishment of such offense are now or may hereafter be prescribed by law, excepting in such cases as are provided for in section 2 of this act."

The original date of repeal, July 1, 1977, was postponed to October 1, 1977 as a result of Pub.L.No.340, § 151, 1977 Ind. Acts 1611.

Ind. 381, 345 N.E.2d 229.[6] These holdings explain the statement made in *Ellison, supra,* relied on by appellant, to the effect that the presentence report statute did not apply to jury trials. It is apparent that the court meant to say that the statute was inapplicable to trials where the jury did the sentencing rather than to all jury trials. *West's Annotated Indiana Code, Criminal Law and Procedure* 35–3.1–1 to 35–40, 454 (1978) (Indiana Criminal Law Study Commission Comments).

To review, appellant was convicted of a crime which required the trial court judge to levy the penalty with the aid of a presentence investigation report. This was done. Although the relevant statute did provide for a mandatory indeterminate sentence, the report was most important in determining whether or not appellant might qualify for a suspension of his punishment and probation. *Ewing v. State* (1974), 160 Ind.App. 138, 310 N.E.2d 571, *overruled on other grounds, Hoffa v. State* (1977), 267 Ind. 133, 368 N.E.2d 250; *Barnhart v. State* (1973), 158 Ind.App. 636, 304 N.E.2d 316; IC 35–7–1–1 (1976) (amended 1976 and 1977).[7] *See also Rex v. State* (1976), Ind.App., 355 N.E.2d 282; *Grzesiowski v. State* (1976), Ind.App., 343 N.E.2d 305. As a result, appellant's personal history and background *was* considered prior to sentencing in the instant case for a valid and legitimate purpose. Therefore, his claim that Indiana's statutory scheme was unconstitutional is without merit.

Appellant's next allegation of error is based on the trial court's denial of his request to call Roland Anderson into court for identification purposes. Anderson was another participant in the crime for which appellant was charged but was being tried separately. Appellant asserts that Anderson's presence would have been relevant and that his exclusion from trial denied him his Sixth Amendment right to have compulsory process for obtaining witnesses in his favor.

The background for this alleged error involves the testimony of Carol Makluski, a customer in the store at the time of the robbery, who identified appellant in court as one of the perpetrators and then stated that she thought that she had seen a barrel appearing at his side. However, she was not certain if what she saw was a gun. The next witness, Robert Strempka, a stock boy who was working at the food market on the day of the incident, testified that he saw all three of the men who participated in the holdup, that two of them carried guns, and that appellant was not one of those with a weapon. Since it was appellant's position that he was never armed throughout the course of the crime, his counsel attempted to bring Anderson into the courtroom in order to establish that fact. When the court turned down this request, an offer of proof was made in which it was stated that if Anderson had been allowed to appear, Strempka would have identified him as being one of the armed robbers, Hill already having been identified as the other one by the witness, and that Strempka would have further testified that appellant was definitely not among those who possessed a weapon.

■ Any error in the trial court's refusal to permit Roland Anderson to be brought into the courtroom for identification purposes must be considered harmless. The witness Strempka had already stated that he did not see appellant with a gun. He testified that only two of the individuals had firearms. He made an in-court identification of defendant Hill as one of those persons and named Roland Anderson as the other armed culprit. An in-court identification of Anderson would not have added anything significant to appellant's cause. Furthermore, it must be remembered that appellant was convicted of robbery, a crime which may be committed with or without a

---

**6.** This distinction is no longer in force as the trial court judge now performs the sentencing function in all cases for offenses committed after October 1, 1977. IC 35–50–1–1 (Supp. 1979).

**7.** The current law with respect to suspension and probation also includes IC 35–50–2–2 (Supp.1979) and IC 35–50–3–1 (Supp.1979).

weapon. Although appellant was also charged with inflicting injury in the perpetration of a robbery or attempted robbery,[8] he was not found guilty of that offense. Therefore, whether the jury believed that appellant was armed or not is immaterial as to whether he was properly convicted of robbery.

Appellant also finds error in the exclusion of certain testimony from co-defendant Stephen Armstrong. As mentioned earlier, Armstrong was originally to be tried with appellant and defendant Hill for the same crimes. As a result of a plea bargain arrangement, the robbery charge was amended to automobile banditry,[9] and the other charge of inflicting injury in the perpetration of a robbery or attempted robbery was dispensed with through a *nolle prosequi* filed by the State. Armstrong then entered a guilty plea to the crime of automobile banditry. The jury was not informed of this development and was only told by the court that Armstrong had been separated from the trial, that he was no longer a defendant in the case, and that the evidence adduced would only pertain to the two remaining defendants.

Later in the trial, appellant's counsel called Armstrong as a witness, and on direct examination, he recalled the events leading up to the robbery. When asked why he was no longer seated at the table with appellant and defendant Hill, the State objected on the grounds that the disposition of his case was immaterial and irrelevant to the guilt or innocence of appellant and Hill. The objection was sustained. An offer of proof was made wherein it was indicated that if Armstrong had been allowed to answer, he would have revealed the plea bargain agreement, including the fact that the sentence he was to receive was a one to five year term of imprisonment.

It is appellant's position that the inability to fully question the witness Armstrong prevented him from making known relevant information to the jury which violated his Sixth Amendment right to have compulsory process for obtaining witnesses in his favor. He also asserts a violation of Article I, § 19 of the Indiana Constitution which provides, "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Appellant contends that by excluding this relevant factor from the jury's consideration, it was not sufficiently informed and therefore could not adequately judge the law and the facts. The gist of his argument is that although the jury could not have fixed the penalty, it could have refused to convict him of robbery, which carried a ten to twenty-five year jail sentence, as being too harsh in light of the fact that defendant Armstrong had been able to plead guilty to an offense which imposed the milder sentence of one to

8. The statute then in force prescribing the elements of this crime provided,

"Whoever inflicts any wound or other physical injury upon any person with any firearm, dirk, stiletto, bludgeon, billy, club, blackjack, or any other deadly or dangerous weapon or instrument while engaged in the commission of a robbery, or while attempting to commit a robbery, shall, upon conviction, be imprisoned in the state prison for life." IC 35–13–4–6 (1976) (repealed by Pub.L.No. 148, § 24, 1976 Ind. Acts 816). The effective date of the repeal, July 1, 1977, was delayed to October 1, 1977 by virtue of Pub.L.No.340, § 151, 1977 Ind. Acts 1611.

9. At the time of Armstrong's plea, automobile banditry was defined as follows,

"If any person or persons shall commit or attempt to commit a felony, having at the time on or near the premises where such felony is attempted or committed, an automobile, motorcycle, airplane, or other self-moving conveyance, by the use of which he or they escape, attempt to escape or intend to escape, or having attempted or committed such felony, he or they seize an automobile, motorcycle, airplane, or other self-moving conveyance, by the use of which he or they escape or attempt to escape, he, they and each of them shall be guilty of automobile banditry, and, upon conviction thereof, shall be imprisoned in the state prison for not less than one (1) year nor more than five (5) years."
IC 35–12–2–1 (1976). This section was repealed by Pub.L.No.148, § 24, 1976 Ind. Acts 816. The July 1, 1977 effective date was changed to October 1, 1977 by Pub.L.No.340, § 151, 1977 Ind. Acts 1611.

five years in prison.[10] It is appellant's belief that had the trier of fact known of Armstrong's less severe punishment, it may have convicted appellant of a lesser included offense of robbery.

Evidence is relevant when it throws or tends to throw light on the guilt or innocence of an accused even though its tendency to do so may be slight. *McPhearson v. State* (1969), 253 Ind. 254, 253 N.E.2d 226; *Thomas v. State* (1968), 251 Ind. 76, 238 N.E.2d 20; *Anderson v. State* (1933), 205 Ind. 607, 186 N.E. 316. The most accepted test of relevancy is whether the evidence offered renders the desired inference more probable than it would be without the evidence. *Hill v. State* (1978), Ind., 371 N.E.2d 1303; *Pirtle v. State* (1975), 263 Ind. 16, 323 N.E.2d 634. In addition, it has been held that a trial judge has wide latitude in ruling on the question of relevancy. *United States v. Gipson* (7th Cir. 1967), 385 F.2d 341; *Barnes v. State* (1975), 263 Ind. 320, 330 N.E.2d 743.

Indiana case law has addressed this issue and has decided that a conviction or guilty plea of one defendant indicted for the same offense as other co-defendants is not substantive evidence of the remaining defendants' criminality and is therefore generally inadmissible. *Lincoln v. State* (1921), 191 Ind. 426, 133 N.E. 351; *Zarnik v. State* (1977), Ind.App., 361 N.E.2d 202. Although both *Lincoln* and *Zarnik* involved situations where the defendant was complaining of error when the State was erroneously allowed to make references to a co-defendant's prior conviction or guilty plea for the purpose of proving the defendant's guilt, the same rationale applies to make improper any attempt by a defendant to disclose the previous conviction or guilty plea of a co-defendant in hopes of establishing his innocence of the crime charged. *See Lyda v. State* (1979), Ind., 395 N.E.2d 776.

In the case at bar, defendant Armstrong's guilty plea to the crime of automobile banditry and the sentence for that offense have no tendency to throw light on the guilt or innocence of the appellant. It had nothing to do with any of the essential elements of the offenses with which appellant was charged and would have made no inference more probable than it was without the evidence. Armstrong engaged in conduct substantially different from that of appellant so that any comparison between the activity of each would have served no legitimate purpose. The excluded testimony was, therefore, irrelevant as far as the appellant's case was concerned, and its introduction would only have worked to mislead the jury.

Appellant next asserts that the trial court erred when it refused to grant his motion for a mistrial due to an instance of alleged misconduct on the part of the prosecuting attorney. During direct examination of Officer John Baron and immediately after the reading of the confessions to the jury by the trial judge, the State attempted to admit into evidence one of the shotguns purportedly used in the robbery. The record reveals that a deputy prosecuting attorney handling the case removed the weapon from a canvas bag, carried it in an upright position in front of the jury, clicked it in open court, and then tried to introduce it. With no response from the State, the trial court sustained an objection to its admission. When appellant's request for a mistrial was denied, his counsel asked the court to properly admonish the jury. The jury was then told that they should completely disregard the shotgun, that it was not to enter into their deliberations, that it was not evidence in the case, and that they were to put it aside entirely. The court made sure that all of the jurors understood this directive and that none of them had any problems with ignoring the firearm. Ap-

---

10. We emphasize that appellant has not argued, nor is this a situation concerning the right to impeach Armstrong by showing he had made a deal with the prosecution. Armstrong did not testify for the state. He was called as a witness by Jefferson. There was no attempt to establish that he was an adverse witness, nor was he unresponsive on the witness stand. The question in issue was posed during direct examination. *Compare, e. g., Turczi v. State* (1979), Ind., 392 N.E.2d 481.

pellant argues that the deputy prosecutor's improper display of the "cold-steel of a deadly weapon" in full view of the jury unduly prejudiced his defense.

▮▮▮ It is a firm principle of law that the granting of a mistrial lies largely within the discretion of the trial court and is only appropriate where the defendant is placed in a position of grave peril as a result of the prejudicial event; peril from which a curative instruction will not extricate him. *Misenheimer v. State* (1978), Ind., 374 N.E.2d 523; *Bean v. State* (1978), Ind., 371 N.E.2d 713. The trial court's ruling will be reversed only for an abuse of that discretion. *Choctaw v. State* (1979), Ind., 387 N.E.2d 1305; *Love v. State* (1977), 267 Ind. 302, 369 N.E.2d 1073.

▮▮▮ Appellant's contention has already been answered by our Supreme Court in *Hill v. State* (1979), Ind., 390 N.E.2d 167, a decision involving the same trial as in the case at bar but dealing instead with an appeal by defendant Hill from his own conviction. The same allegation of error was made by Hill who had joined in the motion for a mistrial. The court rejected his contention, noting several factors including the immediate admonition by the judge, the comment by the trial court, who was in a better position to view the conduct and its impact, that the prosecutor apparently thought that the shotgun would be admissible, and the fact that Hill, like appellant, put forth virtually no evidence in support of his defense. The following conclusion was then reached,

> "This is not a case with strong evidence on both sides and, therefore, not one in which the conduct of the prosecutor would likely influence the trier of fact as we found in *White v. State, supra.* Nor is the state's case 'one which a prosecutor would be anxious to bolster.' *Fiswick v. United States* (1946), 329 U.S. 211, 218, 67 S.Ct. 224, 228, 91 L.Ed. 196, 201."

390 N.E.2d at 171. Furthermore, the Supreme Court of Indiana has upheld denials

of requests for a mistrial in other cases where the improper showing of a weapon by the prosecutor had been cured by adequate cautionary instructions to the jury. *Sceifers v. State* (1978), Ind., 373 N.E.2d 131; *Ballard v. State* (1974), 262 Ind. 482, 318 N.E.2d 798; *Kelley v. State* (1953), 231 Ind. 671, 110 N.E.2d 860. We accordingly hold that no abuse of discretion was committed when the trial court overruled the motion for mistrial.

▮▮▮ Finally, appellant contends that by merely incarcerating him in the Indiana State Prison in Michigan City, Indiana, he has been inflicted with cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution. He also asserts that he is a victim of vindictive justice and that he has been denied his right to rehabilitation in contravention of Article I, § 18 of the Indiana Constitution which provides, "The penal code shall be founded on the principles of reformation, and not of vindictive justice." He invites this court to conduct an investigatory hearing on the subject of the prison's inadequacy. Appellant cites no authority in support of his argument and makes no reference to specific examples of deficiencies at the prison. Instead, he attacks the institution generally as being "squalid, uncivilized, and contrary to the constitution by which we are governed." (Appellant's brief 72).

We need not reach the merits of these allegations and do not comment on the state of affairs at the Michigan City prison. Raising this issue in an appeal from a criminal conviction is not the correct avenue. There is no allegation that the trial court committed reversible error and hence, as an appellate court, we have nothing to review. Just recently in *Pruitt v. Joiner* (1979), Ind. App., 395 N.E.2d 276, this court held that where inmates do not challenge the legality of their custody but only the conditions of detention, the course to pursue is either a writ of mandate or prohibition or a civil rights action pursuant to 42 U.S.C. § 1983 in either a state or federal court.[11] *See also*

---

11. In *Pruitt*, the plaintiffs, four pre-trial detainees in the Lake County Jail, filed a petition for a writ of habeas corpus which we decided was

not the appropriate remedy under the circumstances.

*Jones v. Wittenburg* (N.D.Ohio 1971), 323 F.Supp. 93, *aff'd sub nom. Jones v. Metzger* (6th Cir. 1972), 456 F.2d 854; *Holt v. Sarver* (E.D.Ark.1970), 309 F.Supp. 362, aff'd (8th Cir. 1971), 442 F.2d 304, where § 1983 actions were brought in federal court to contest the insufficient facilities in the local penal system. Thus, if appellant desires to proceed with his constitutional inquiry, the proper mode of relief is available to him.

The judgment is hereby affirmed.

HOFFMAN, J., concurs.

STATON, J., concurs in part and dissents in part and files separate opinion.

STATON, Judge, concurring in part and dissenting in part.

I concur with the Majority Opinion in its affirmance of Jefferson's conviction, however, I dissent to the Majority's conclusion that Jefferson cannot raise the issue of cruel and unusual punishment under the Eighth Amendment of the United States Constitution. My reasons for dissenting to this portion of the Majority Opinion are set forth in my dissent in *Pruitt v. Joiner* (1979), Ind.App., 395 N.E.2d 276.